Mayor, etc., 8 N. Y. 110, it was held that the wife had no estate as against proceedings for condemnation. The same principle was also held in Witthaus v. Schack, 105 N. Y. 332, 11 N. E. 649. In Clifford v. Kampfe, 147 N. Y. 383, 42 N. E. 1, the right of a wife to maintain an action to set aside a deed by which, apparently, her inchoate right of dower was transferred, was upheld; but, while it was held that her inchoate right of dower was a valuable interest, entitled to protection, the rule was recognized that such interest did not amount to an estate or title. By the language of the section cited, the right to redeem is limited to persons having an estate in or mortgage upon the lands, whose estate or liens appear of record in the county of Kings. The interest of the wife does not fall within the language of the provision, for she has no estate; nor does it fall within its spirit, for there can be no record which would give the tax purchaser any notice or information whether the owner of the land was married, or, if married, who his wife might be. We are of opinion, however, as stated in Sutherland v. City of Brooklyn, supra, that the relator, as a condition of obtaining this surplus, should execute a release of all his interest in the land to the tax buyer, which release should be delivered to the comptroller for the purchaser's benefit.

The order appealed from should be affirmed, with costs, upon the relator executing the release above prescribed. All concur.

---

### NEW YORK CENT. & H. R. R. CO. v. BROCKWAY BRICK CO.

(Supreme Court, Appellate Division, Second Department. November 20, 1896.)

1. EVIDENCE—LETTERS PATENT—CERTIFIED COPIES.
   A grant by letters patent, being an act of government, should, in the absence of legislative action, be enrolled in the office of the secretary of state; and a certified copy of such record is admissible in evidence where the original patent is lost.

2. SAME—COPIES OF MAPS—PUBLIC DOCUMENTS.
   An objection to the admission in evidence of certified copies of letters patent, on the ground that they failed to contain copies of maps which the patents state were annexed to them, is untenable, where the patents show that such maps were also filed with the clerk of the county in which the land was situated, and with the commissioner of the land office.

Appeal from special term, Dutchess county.

Action by the New York Central & Hudson River Railroad Company against the Brockway Brick Company to recover possession of land. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before BROWN, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Ralph E. Prime, for appellant.
Robert F. Wilkinson, for respondent.

CULLEN, J. This is an action in ejectment to recover three parcels of land in Dutchess county, near Fishkill Landing, formerly under the waters of the Hudson river. By the judgment of the

special term the plaintiff recovered all three parcels.    The defendant appeals from that judgment only as to one of the parcels, that lying to the west of the railroad of the plaintiff.    The plaintiff claims title under an alleged grant from the people of the state of New York, by letters patent bearing date the 26th day of December, 1873.    Subsequent to this the defendant obtained two grants from the people, one bearing date November 11, 1886, and the other September 3, 1891, sufficient in extent to cover the lands in dispute, but by their express terms there was excepted from them the lands acquired by the plaintiff.    The grants to the defendant being thus subject to the rights of the plaintiff, the only questions that arise in this case are as to the existence, validity, and effect of the grant to the plaintiff.

On the trial of the action, the original letters patent were not produced, plaintiff asserting that they had been lost.    To establish the grant, plaintiff offered in evidence a certified copy of the record of the letters patent in the office of the secretary of state.    The defendant objected to the admission of this copy, on the ground that there was no authority in law for the record of the patent in the office of the secretary of state, and that, as the record was without authority of law, a copy of the record was not competent evidence.    This objection was overruled, and the copy admitted, and the correctness of the ruling of the trial court in this respect presents the question most seriously urged by the defendant on this appeal.    It is asserted by the counsel for the defendant that no statute can be found, either state or colonial, authorizing or directing the record of grants of land by the people or crown in the secretary of state's office.    The counsel for the respondent concedes this claim, though there are two statutes, to be noticed hereafter, which recognize the existence of such records.    But, while there may be no statutory direction for the record, it does not follow that the record is not made "pursuant to law," within the terms of section 933, Code Civ. Proc.    A grant from the sovereign, whether crown or state, differs radically from a grant by a private individual.    Blackstone says (Bl. Comm. bk. 2, c. 21):

"The king's grants are also matter of public record.    For, as St. Germyn says, the king's excellency is so high in the law that no freehold may be given to the king, nor derived from him, but by matter of record.    And to this end a variety of offices are erected, communicating in a regular subordination, one with another, through which all the king's grants must pass, and be transcribed and enrolled, that the same may be narrowly inspected by his officers, who will inform him if anything contained therein is improper, or unlawful to be granted."

In Bogardus v. Rector, etc., 4 Sandf. Ch. 633, the vice chancellor said:

"The sovereigns of England never granted lands by deed.    Their alienations were always of a higher character, being known in the law as alienations by matter of record.    The grants were recorded in the proper office, and the great seal was affixed to the transcript, as evidence of the grant to the public.    The letters of gift or transfer were thereby made patent, or open to the world.    In practice, whatever rescript or authority for letters patent emanated from the sovereign personally, whether under his sign manual or by writ of privy seal, it formed the

warrant for the officer holding the great seal to affix the same to the letters patent, and was retained as his authority for the act."

The vice chancellor then goes on to show that the same practice obtained as to colonial grants in this province.

The same distinction applies to grants by the government since the Revolution. In U. S. v. Schurz, 102 U. S. 378, it was held that a patent for public lands, signed, sealed, and recorded, took effect without delivery, contrary to the rule as to private conveyances. Justice Miller there said:

"The authorities on this subject are numerous and uniform. They have their origin in the decisions of the English courts upon the grants of the crown, evidenced by instruments called there, as here, 'patents.' * * * These, he [Blackstone] says, are all made matter of public record, and are contained in charters or letters patent. He then recites the processes by which patents are prepared and perfected, the various officers through whose hands they pass, and the manner of affixing the seal to them, and their final enrollment. They are then perfect grants, and no mention is made of delivery as a prerequisite to their validity. * * * But, in regard to the transfer of title by matter of record, whether this record were a judgment or decree in a court of justice, as fines and recoveries, or the record made in the proper office (generally in the court of chancery by the lord chancellor) of the king's grant, called 'enrollment,' no livery of seisin was necessary, nor any delivery of the document sealed with the king's seal; for, when this seal was affixed to the instrument, and the enrollment of it was made, no higher evidence could be had, nor was any other evidence necessary of this act or deed of the king."

It will thus be seen that the very name of such grants, "alienation by matter of record," necessarily assumes that the grants are to be recorded in the proper public office, though it is true a failure to record the grant might not vitiate it. McGarrahan v. Mining Co., 96 U. S. 316. When it is said that it must be recorded in the proper public office, such an office as that of the county clerk or registrar of deeds is not intended thereby. Registry in these latter offices is made to give notice of ownership to persons dealing with the property, and to preserve muniments of title. But the letters patent, being a public act of the government, are to be recorded in the same manner as other acts of the government; that is, in the appropriate office of the government. Plainly, in the absence of any legislative action on the subject, the proper office is that of the secretary of state. From the earliest settlement of the state to the present time, all land grants have been recorded in the office of that officer or his colonial predecessor. In our experience at circuit it has been the invariable rule to prove either colonial or state grants by certified copies from the secretary of state's office, and none of us has ever heard the competency of such proof questioned. The practice of recording such grants in that office is expressly recognized by two acts of the legislature. By section 5, c. 295, Laws 1839, it is provided that:

"A copy of any deed, conveyance or other instrument in writing relating to, or in any manner affecting the title to any real estate, which is or may be recorded or filed in the office of the secretary of state, upon being certified by the said secretary in the manner required by law, to entitle the same to be read in evidence, may be recorded in the office of the clerk of any county in this state, or in the office of the register of deeds in the city of New York with the secretary's certificate."

By chapter 110, Laws 1845, it is provided that:

"All letters patent issued under the great seal of this state, granting land to any person or persons, in addition to the record thereof made in the office of the secretary of state, may be recorded in the county where the lands granted are situated. * * *"

We therefore conclude that the record of the plaintiff's grant in the office of the secretary of state was made pursuant to law, and that the certified copy of it was competent evidence.

A further objection was made to the admission of this copy, on the ground that the record was incomplete, in that it fails to contain a copy of the map which the letters patent state was annexed to them. We think this objection untenable. The patent granted to the plaintiff all the lots situated in the county of Dutchess, under the waters of the Hudson river, within the boundary line of the Hudson River Railroad, as shown upon the maps thereof filed in the office of the clerk of said county on the 30th day of September, 1868, the 10th day of November, 1868, and the 1st day of December, 1868, and also with the commissioners of the land office, and upon the map thereto annexed. The railroad statute requires all railroad companies to file in the office of the clerks of the counties through which their road passes a map and profile of the lines of their roads, and of any amended or changed location thereof. The maps filed by the plaintiff became public records. Under the language of the patent, the lines and boundaries of the railroad, as established on such maps, defined and controlled the extent of the grant made to the plaintiff. If we could assume that there might be some discrepancy between the map annexed to the original letters patent and the maps filed in the county clerk's office, the latter would govern. The original maps from the county clerk's office were produced on the trial. They showed the lands in dispute as lying within the bounds of the railroad, and hence within the limits of the plaintiff's grant. It is, therefore, wholly immaterial whether the small map placed in evidence by the plaintiff as a copy of the map annexed to the original letters was sufficiently proved or not. It was shown to be in accord with the maps in the county clerk's office. If its admission was erroneous, it worked no harm, as the location and boundaries of the plaintiff's grant were established by the other maps.

The judgment appealed from should be affirmed, with costs. All concur.