LAND AND LAKE ASSOCIATION, Appellant, *v.* ALLEN CONKLIN, Respondent.

Fourth Department, March 27, 1918.

**Real property — action to restrain continued trespass — claim of title by defendant — deed establishing defendant's title.**

Action to restrain the defendant from committing a continuous trespass upon a strip of land bounded by a lake and lands under the waters of said lake to the center thereof. The defendant claims ownership of the lands in question.

Evidence and the deed under which the defendant claims title examined, and *held*, to establish the defendant's title, especially in view of the practical construction put upon said deed by the parties interested for over eighty years.

Where a grant of lands is so framed as to touch the waters of a non-navigable lake the title to the lands underneath the lake to its center passes to the grantee, unless they are excluded by express exception. And this is true although the lines of the survey as stated in the description do not touch the lake.

In construing a deed most favorably to the grantee the word " and " in a description may be construed to mean " or."

A description of land which runs along the road and north side of a lake to a birch conveys to the grantee a title to the land and the land under the water of the lake to the center thereof.

APPEAL by the plaintiff, Land and Lake Association, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Columbia on the 15th day of March, 1917, dismissing the complaint upon the decision of the court after a trial before the court without a jury.

This appeal was transferred from the Third Department to the Fourth Department.   (181 App. Div. 913.)

*Martin L. Stover*, for the appellant.

*J. Rider Cady*, for the respondent.

DE ANGELIS, J.:

This appeal has come to us from the Third Judicial Department.

The judgment under review dismissed the complaint upon the merits. The plaintiff, claiming to be the owner of a narrow strip of land bounded southerly by Copake lake and the land extending therefrom underneath the waters of the lake to the center thereof together with the waters of the lake thereon, brought the action to restrain the defendant from committing continuous acts of alleged trespass upon such premises. The defense was that the defendant owned such premises. The sole question for our consideration is whether or not the grantee in a deed of conveyance executed and delivered in the year 1831 by a person who at that time owned a large tract of land including the premises in question and the lake, acquired title to the premises in question by means of such deed of conveyance.

Copake lake is an inland, non-navigable and non-tidal lake or pond, situated in the town of Copake, Columbia county, N. Y., has a superficial area of 500 acres, more or less, is 6,800 feet long, 2,500 feet wide, and is five miles around. In the locality involved, that which is referred to as the *northerly* boundary of the lake is more nearly the *easterly* boundary. This may explain some confusion, for in some instances an actual northerly direction is referred to as such.

The strip of land in question is bounded northerly by the beaten path of a public highway which has been in existence from a time prior to the execution and delivery of the deed of conveyance referred to. This deed was given by Mary Livingston to James Conklin, is dated May 12, 1831, was recorded that day in the office of the Columbia county clerk and conveys three different pieces of land described therein as follows:

" ' All that certain farm or tract of land described on the Map of Lot No. One of a certain division of the manor of Livingston as Farm No. 57, Beginning at a hickory standing on the North side of the road and Northerly bank of the Copake Lake and runs thence N. 38″ 0 E 50″ 0 along the farm No. 58 to a white oak in the South line of No. 60 N. 50″ 0 W 0″ 680′ along Farm No. 60 to a white oak N. 58″ 0 W 15″ 15 along the same to a stake to course of No. 56 S 38″ 0″ W 44″ 0″ along No. 56 to the road along the bank of

said Lake S. 31″ 0″ E 20″ 0 along the edge of said road S 57″ 0 E 2″ 50 along the same to the beginning,' containing 104¼ Acres, Also the wood lot to the above farm Beginning at the Northwest corner at a small hickory in line of No. 38 then due South 14″ 80 along farm No. 38 to a black oak in line of 29 due E 12″ 60 along Farm No. 29 to a hickory a corner of No. 30 N 5″ 0 W 15″ 40″ along Farm No. 30 to a stake near a black oak due to 11″ 20 to the beginning, containing 18 acres.   Also, also on the farm described on the said Map as Farm No. 58, Beginning at the South west corner thereof at a hickory standing on the N Bank of the Copake Lake on the North side of the road, thence S 57″ 0″ E. 7″ 50 along said road & Lake S. 30″ 0″ E 14.30 along the same to a Birch a corner of No. 37 N 61″ 0 E 10″ 90 along No. 37 to a stake N 24″ 0 W 8″ 25 along the same to a popular N 52″ 0 E 15″ 0 along the same to a· black oak N 34″ 0 E 11″ 88 along the same to a black oak corner of No. 36 N 7″ 0″ E 9″ 0″ along No. 36 ·to a hickory N 45″ 0 E 7″ 75, along the same to a hickory on a rock N 50″ 0 W 17″ 50 along No. 60 to a white oak S 38″ 0″ W 50″ 0 along farm No. 57 to the Beginning, containing 103¾ acres according to a survey of Alexander Thompson reference being had to his Field Book & Map will more fully appear."

The trial court has determined that the premises in controversy are included in the parcel of land last described above.

It is especially to be noted that the deed in question was given when the country was new (1831) and land was cheap. Both the surveyor who testified for the plaintiff and the surveyor who testified for the defendant agreed that the description of the property contained in the deed was not accurate.   While there is some evidence that the northerly line of the road in question is marked by the remains of a stone wall, the only other evidence of the road or its extent is the beaten track whose northerly line is estimated to be only six or eight feet from the wall.   The southerly line of the road is not defined and may well be regarded as the lake. The southerly line of the beaten track of the road in some places is almost at the edge of the water and in other places it is from ten to twenty feet from the water.   The bank

extending up from the lake is steep and rocky in many places.

I think that we should adopt the conclusion of the trial court, under the authorities. I call attention particularly to this language in the description: " Beginning at the South west corner thereof at a hickory standing on the N Bank of the Copake Lake on the North side of the road, thence S 57″ 0″ E. 7″ 50 *along said road & Lake* S. 30″ 0″ E 14.30 *along the same,*" etc. (The italics are mine.) Within the rule laid down in *Gouverneur* v. *National Ice Co.* (134 N. Y. 355), this conveyance gave the grantee title to the land and water in controversy.

Where the grant is so framed as to touch the water of the lake, the title of the land underneath the lake to its center passes to the grantee under the grant. If the parties mean to exclude it they should do so by express exception.

We assume, as we are permitted to assume, in such a case as this, that the " hickory " marking the starting point was chosen as such because it was a substantial monument to mark the line between lot No. 58 and lot No. 37 when there was no other substantial monument in such line nearer the lake and not in the lake or the roadway; and not as a delimitation of the southerly line between lot No. 58 and lot No. 37. The fact that the lines of the survey as shown by the description do not touch the lake does not overcome the presumption that the title passed to the center of the lake. The fact that the acreage as mentioned in the description is contained within the lines mentioned does not overcome this presumption. If the description omitted any reference to the road, there would be no doubt that the title would go under the description to the center of the lake. If there was no reference to the lake, it would go by the description to the center of the road. (*Van Winkle* v. *Van Winkle,* 184 N. Y. 193.) If we give full force to the rule of construction that must favor the grantee, it seems entirely reasonable to say that the language " along said road " took the strip of land to the center of the road and the language " & Lake " took the additional strip of land to the lake, and, hence, to the center of the lake. The conjunction " and " is there used in its familiar sense, to wit, " in addition to."

In another view of the situation, " and " in the description referred to may be regarded as used in the sense of " or." This is not unusual. (*Ludlow* v. *City of Oswego,* 25 Hun, 260, 261.) We have already suggested that the southerly boundary of the road was the lake and that the strip of land in controversy was of no value at the time of the conveyance, so that the conveyancer might well have made the boundary along the road or the lake, intending thereby to give to the grantee the land down to the lake and hence to the center of the lake.

We think the construction thus given by us to the deed in question is strengthened by the practical construction put upon it by the parties interested for more than eighty years.

We are asked to disapprove of the refusal of the trial court to find that the defendant had acquired title to the premises in controversy by adverse possession and to find that he had acquired title by such possession. We do not think we should comply with this request in view of our construction of the original deed.

It follows from the foregoing that the judgment appealed from should be affirmed, with costs.

All concurred.

Judgment affirmed, with costs.