EDITH WILBER MIX, Plaintiff, *v.* FRED E. TICE, EMILIE TICE, ALBERT C. NEWERT, ERNEST W. SCOTT, CHARLES W. HUBBARD, OLIVER J. HALL, MARJORIE V. Z. HALL, BENJAMIN SPRAGUE, ETHEL SPRAGUE, WILLIAM B. STORER, EDITH STORER, EMILIE VAN ZANDT, JAMES E. ELLIOT and HAROLD MARBLE, Defendants.

Supreme Court, Otsego County, August 3, 1937.

*Donald H. Grant*, for the plaintiff.

*Edwin R. Campbell*, for the defendants Fred E. Tice, Emilie Tice, Albert C. Newert, Ernest W. Scott, Charles W. Hubbard and Harold Marble.

*Oscar J. Brown*, for the defendants Oliver J. Hall, Marjorie V. Z. Hall and Emilie Van Zandt.

*Everett B. Holmes*, for the defendants Benjamin Sprague, Ethel Sprague, William B. Storer, Edith Storer and James E. Elliot.

McNAUGHT, J.  Crumhorn lake or pond is a non-navigable body of fresh water located upon what is known as Crumhorn mountain, in the town of Milford in the county of Otsego.  The lake is somewhat oval in shape and covers an area of about seventy acres. It is located upon what is known as Crumhorn Mountain tract, which was unappropriated lands the title to which was vested in the State of New York.

The plaintiff is the owner of adjacent lands bordering the lake and extending along the westerly, northerly and southerly portions thereof.

The defendants are the owners of lands originally a portion of lot 52 of the Crumhorn Mountain tract, and adjacent to the lake upon the easterly side.

The predecessor in title of the plaintiff was one David Wilber, and all her rights to lands adjacent to the lake and to the lake itself are derived from David Wilber, who was her paternal grandfather, and devised such rights to the plaintiff by the provisions of his last will and testament.

The predecessor in title of the defendants, and upon whose rights the title of the defendants rests, was one Gerritt Smith, who derived his title by letters patent under date of June 7, 1841.

In the year 1886 David Wilber presented to the Board of Commissioners of Public Lands a petition for the sale at public auction or to him by private sale, of the lands under water and the shores thereof to high-water mark, known as Crumhorn pond or lake. This petition was verified January 21, 1886.  Subsequent proceedings by and before the Commissioners of the Land Office culminated in the grant of letters patent of " All that certain piece or parcel of land distinguished Crumhorn Pond situate in the Town of

Milford, in our County of Otsego, containing seventy acres of land (70 A) * * * excepting and reserving to the adjacent riparian and upland owners of lands along and upon said Crumhorn Pond or Lake, and their heirs and assigns, at all times and seasons of the year, full and free access to the waters of said Pond or Lake, for the purpose of watering live stock, and all such other rights, liberties and privileges to the use of the waters of said Pond or Lake as they were entitled to prior to June 16th, 1886." The letters patent are quitclaim in form, except and reserve all gold and silver mines, and provide: " And These Presents shall in no wise operate as a warranty of title." Such letters patent were issued on the 16th day of June, 1886, and on that date recorded in book 18 of Patents, at page 203, in the office of the Secretary of State. Such letters patent were recorded in Otsego county clerk's office on the 3d day of February, 1933, in liber 364 of Conveyances, at page 431.

The letters patent to Gerritt Smith, predecessor in title of the defendants, were issued by the Commissioners of the Land Office, June 7, 1841, conveyed lot No. 52 of the Crumhorn Mountain tract, described as containing ninety-five acres, were recorded in the office of the Secretary of State, June 7, 1841, and in the office of the clerk of the county of Otsego, November 10, 1848, in liber 84 of Conveyances, at page 235. Lot No. 52 of the Crumhorn Mountain tract so granted to Gerritt Smith by letters patent was described therein as " Bounded and described in the field book and map of said tract made by David L. Sayre in the year 1822 filed in our Secretary's Office as follows, beginning at a stake and stones standing on the east shore of the Crumhorn pond and runs thence North eighty-eight degrees east forty-two chains to a stake and stones corner of No. 51, thence south twenty-four chains, eighty-two links, to a stake and stones thence west fifty-three chains to the pond and corners on lot No. 53, a stake and stones thence around the east shore to the corner of No. 51, the place of beginning containing ninety-five acres."

The plaintiff contends that the letters patent to Smith did not convey any lands under water, or any right or title to the use of Crumhorn lake or pond, and consequently the maintenance of docks and piers and the use of the waters of the lake for boating, fishing, swimming or other purposes, constitutes a nuisance and is a trespass upon plaintiff's rights and property, she contending that the lake in its entirety is vested in her by virtue of the letters patent issued to her predecessor in title, David Wilber.

The defendants contend that the letters patent granted to their predecessor in title, Smith, convey lands covered by the waters of Crumhorn lake or pond to the center thereof adjacent to lot

No. 52, and that they are, therefore, vested with title and with full right to the use of the waters of Crumhorn lake opposite lot 52, to the center of the lake.

The Crumhorn Mountain tract, it is conceded, is a tract of land lying south of the lands granted by letters patent to Israel Spencer and others.

The Legislature, by various acts, directed the sale of unappropriated lands in the county of Otsego. (See Laws of 1813, chap. 187; Laws of 1816, chap. 90; Laws of 1819, chap. 225; Laws of 1820, chap. 55; Laws of 1822, chap. 225.) A survey of the Crumhorn Mountain tract was made by one Sayre under the authority of the Surveyor General, and a map of the same together with the field book filed in the office of the Secretary of State. This map delineates Crumhorn lake or pond and the lots of the Crumhorn Mountain tract as laid out adjacent to the lake. Lots 13, 14, 16, 51, 52 and 53 of the Crumhorn Mountain tract, as delineated upon the Sayre map, bordered upon and touched Crumhorn lake or pond.

Lot 53 was granted by letters patent, October 1, 1829, to Daniel Winsor. The same were recorded in book 30 of Patents, at page 58, in the office of the Secretary of State. The description, so far as material to the issues here involved, reads as follows: " beginning at a stake and stones standing on the east shore of the Crumhorn Pond * * * to the pond thence around the east shore to the place of beginning."

Lot 14 was conveyed by letters patent, March 2, 1831, to Thomas Crouch. The same were recorded in liber 30 of Patents, at page 374, in the office of the Secretary of State. The description, so far as material to the issues here involved, reads as follows: " beginning at a stake and stone standing on the West shore of the Crumhorn Pond, southwest corner of No. *13*, * * * to the pond, thence along the west shore of the pond to the place of beginning." It appears from the record that the patentee, Crouch, was an alien, and upon his death the lands escheated. Letters patent were subsequently issued to his widow, Mary Ann Crouch, on December 4, 1840, to all of the lot, excepting fifty acres conveyed to William Crouch, Jr. The description in the letters patent to the widow is identical with that in the original patent. There was likewise issued to William Crouch letters patent, May 4, 1842, to the north part of lot No. 14, containing fifty acres, which north part is described in the patent, so far as material to the issues here involved, as follows: " Beginning at the northeast corner of the lot being a stake at the Crumhorn Lake * * * to the lake, thence along the lake to the place of beginning."

Lot 13 was granted by letters patent, January 26, 1833, to David L. Sayre. The same were recorded in the office of the Secretary of State, January 26, 1833, and in Otsego county clerk's office, December 8, 1848, in liber 84 of Conveyances, at page 366. The description, so far as material to the issues here involved, reads as follows: "Beginning at a pine tree standing on the North Shore of the Crumhorn Pond * * * to the West Shore of the pond thence around the West and North Shore of the pond to the place of beginning."

Lot 16 was granted by letters patent, September 24, 1836, to Joseph H. Crandall. The same were recorded in the office of the Secretary of State, September 24, 1836, and in the Otsego county clerk's office, April 13, 1863, in liber 125 of Conveyances, at page 499. The description, so far as material to the issues here involved, reads as follows: "Beginning at a stake and stones at the south side of the lake * * * to a stake and stones, at the Lake along the land of *J and* W. Crouch, then along the Lake to the place of beginning."

Letters patent were next issued to Gerritt Smith for lot 52, as above stated.

Lot 51 was granted by letters patent, February 4, 1851, to Marvin H. Cable. The same were recorded in Otsego county clerk's office, May 1, 1851, in liber 91 of Conveyances, at page 468. The description, so far as material to the issues here involved, reads as follows: " to the North Shore of the Crumhorn Pond a pine tree cornered thence around the North East Shore of the pond."

The lands conveyed by letters patent of lots 13, 14, 16, 51 and 53 subsequently passed by mesne conveyances to plaintiff's predecessor in title, David Wilber, and he was the owner at the time of his death of all that portion of such lots as bordered upon or were adjacent to Crumhorn lake or pond. That portion of lot 52 adjacent to and bordering upon the lake passed by mesne conveyances from Gerritt Smith, defendants' predecessor in title, to the various defendants in this action.

It is undisputed that Crumhorn lake has practically no inlet except the waters of two very small creeks. It is fed by springs within the body of water itself, and the outlet at the northerly end is a short gully with a twelve-inch tile under a road, which conveys the waters from the outlet. The lake is in no sense of the term navigable water. (*People* v. *Canal Appraisers,* 33 N. Y. 461; *Ledyard* v. *Ten Eyck,* 36 Barb. 102; *People ex rel. New York, O. & W. R. Co.* v. *State Tax Commission,* 116 Misc. 774; *Shandalee Camp, Inc.,* v. *Rosenthal,* 133 id. 502.)

Some question has been raised by the defendants relative to the fact the letters patent to David Wilber were not of record in the Otsego county clerk's office, the claim being advanced that the defendants had the right to depend upon the records in that office in determining the sufficiency of their title and their rights in the lake. We do not agree with the contention. The statute (R. S. pt. 1, chap. 9, tit. 5, § 5; 1 R. S. 198, § 5) prior to chapter 517 of the Laws of 1896 furnished ample authority for recording land patents in the office of the Secretary of State. By the provisions of that act it was made mandatory to so record them. It was subsequently provided (Real Prop. Law of 1896, § 245; now Real Prop. Law, § 295) that such letters patent may be recorded in the county where such property is situated. It is not mandatory to so record them in the county clerk's office, and the failure to do so is unavailing to the defendants. (*New York Central & H. R. R. R. Co.* v. *Brockway B. Co.*, 10 App. Div. 387; affd., 158 N. Y. 470.)

The evidence fairly establishes that the adjacent owners, and particularly the owners and occupants of lot 52, preceding the defendants, and the defendants, used the waters of Crumhorn lake for pleasure purposes, for fishing, swimming and cutting ice therefrom, and so continued such uses until shortly before the commencement of the action, when the plaintiff objected and claimed the ownership of the entire body of water. Defendants contend that such uses established a right and title in them by prescription and adverse user. We are of the opinion that the sort of user established by the evidence is not of such a character as to give a title by prescription. It was more in the nature of a user by sufferance. The defendants are not vested with title or right to the lands under the lake, or to the use of the waters opposite lot 52 by virtue of the uses which the owners and occupants of lot 52 have heretofore made of the lake. (*Commonwealth Water Co.* v. *Brunner*, 175 App. Div. 153; *Greenspan* v. *Yaple*, 201 id. 575, 578; *Hammond* v. *Antwerp Light & Power Co.*, 132 Misc. 786; *Noble* v. *Echo Lake Tavern, Inc.*, 142 id. 427.)

The principles of private ownership apply to the bed of a small lake the same as to other land, and the owner of a part of the bed is limited as to bathing, boating and fishing to the waters of the lake lying over that part of its bed which he owns. (*Commonwealth Water Co.* v. *Brunner, supra*, 162.)

Riparian owners of lands adjoining fresh water non-navigable streams and small inland lakes take title to the thread of the stream or the center of the body of water, unless it clearly appears that the

adjacent waters are excluded from the conveyance. (*Smith* v. *City of Rochester*, 92 N. Y. 463; *Gouverneur* v. *National Ice Co.*, 134 id. 355; *City of Geneva* v. *Henson*, 195 id. 447, 463; *Fulton L., H. & P. Co.* v. *State*, 200 id. 400; *Matter of City of New York* [*West Farms Rd.*], 212 id. 325, 330, 331; *Stewart* v. *Turney*, 237 id. 117, 121, 122; *White* v. *Knickerbocker Ice Co.*, 254 id. 152; *Land & Lake Association* v. *Conklin*, 182 App. Div. 546; *Confer* v. *Pirman*, 247 id. 825; affd., 273 N. Y. 587.)

After reviewing at length many authorities in discussing the question of the title in the soil under the water of a lake, the Court of Appeals said: " The views already given lead to the conclusion that the common law relating to the construction and extent of grants of land bordering and bounded on such waters, is applicable alike to conveyance bounding lands on fresh water rivers and small non-navigable lakes or ponds. Such is the character of the one in question; and whether its bed was embraced in or excluded from the grants made by the deeds before mentioned is dependent upon their construction. The boundaries are described as along the pond; and unless in some manner qualified or restricted they by legal construction had the effect to embrace its bed within their grants. This in such case is the presumed intent unless the contrary appears." (Citing cases.) (*Gouverneur* v. *National Ice Co., supra*, 364, 365.)

The legal effect and the construction of a conveyance is to be determined by the terms and language employed. (*Smith* v. *Bartlett*, 180 N. Y. 360.)

" While it has been abundantly established that a conveyance bounded by or on a stream will be construed and will be regarded as running to the center of the stream on the theory that it could not be anticipated that a grantor would desire to retain title to the bed of the stream between the shore and the center line thereof when he had conveyed the abutting uplands, it is equally well established that a grantor may so definitely and specifically bound his conveyance by the bank of the stream that no process of interpretation will carry title to the center thereof." (Citing cases.) (*Matter of City of New York* [*West Farms Rd.*], *supra*, 330, 331.)

In this State and in other jurisdictions where the common-law rule obtains, it has been established that as between adjoining owners on non-navigable streams, rivers and inland lakes, each owner takes title *ad medium filium aquæ*, in proportion to his line on the margin in front of his upland according to straight lines drawn at right angles between the side lines of his land on the shore and the center line of the stream. Where a lake is oval in form with its length double its width and the shore line practically unbroken

by coves or bays, the lot lines bounding the same at right angles, it is legally a non-navigable stream to which the rule applies. (*Calkins* v. *Hart*, 219 N. Y. 145, 148. See, also, *Cramer* v. *Perine*, 251 id. 177, 183.)

The well-established rules were again clearly enunciated in *White* v. *Knickerbocker Ice Co.* (*supra*), where the court reiterated the rule expressed by COWEN, J., in *Luce* v. *Carley* (24 Wend. 451): " Where the grant is so framed as to touch the water of the river and the parties do not expressly except the river, if it be above tide, one-half of the bed of the stream is included by construction of law. If the parties mean to exclude it, they should do so by express exception. Without adhering rigidly to such a construction, water gores would be multiplied by thousands along our inland streams small and great, the intention of parties would be continually violated, and litigation become interminable."

Discussing words which would constitute express exceptions and those which would not, the court in *White* v. *Knickerbocker Ice Co.* (*supra*), clearly stated the applicable rule in the following language (at pp. 156 and 157):

" A description carrying the boundary ' by the shore ' is such an express restriction (*Child* v. *Starr*, 4 Hill, 369, 375); likewise, ' to the bank ' (*Halsey* v. *McCormick*, 13 N. Y. 296). On the other hand, ' along said pond,' was held in the *Gouverneur* case not to be such a restriction, and carried title to the center of the pond.

" The Court of Errors in *Child* v. *Starr* (*supra*, at p. 373) said: ' Where the grant to the riparian proprietor has no other boundary on the *side* thereof which is adjacent to the river but the stream itself, the legal presumption is that his grantor intended to convey to the middle of such stream. * * * Running to a monument standing on the bank, and from thence running *by the river* or *along the river, etc.*, does not restrict the grant to the bank of the stream.'

" These principles of law as settled by the courts of this State, were summarized by GRAY, J., in *Fulton Light, Heat & Power Co.* v. *State of New York* (200 N. Y. 400, p. 417), and the rule that if the grantor desires to retain his title to the land under water, he must do so by express words or by such a description as clearly excludes it from the land conveyed, was reiterated by ANDREWS, J., in *Stewart* v. *Turney* (237 N. Y. 117, 121).

" The description which runs the boundary *by* the river or pond, or which is so framed as to touch the water of the river or pond, carries title to the center thereof. It is not a clear and express restriction of the title to the upland. (*Luce* v. *Carley, supra:*

*Gouverneur* v. *National Ice Co., supra.*)   The description in *Hardin* v. *Jordan* (140 U. S. 371, p. 374), which carried title to the land under water, was ' along the margin of the lake.' "

In *Stewart* v. *Turney* (*supra*) the Court of Appeals declared the presumption a rule of property, stating (at pp. 121, 122): " In deeds from an individual owning to the center of a highway or a non-tidal stream or a lake or pond or land said to be bounded by such highway, stream or lake or simply of a tract with reference to a map showing the tract to be so bounded, the grantee takes title to the center of the highway or to the thread of the stream or lake. A presumption founded originally upon the assumed intent of the parties it has now become a rule of property.   If the grantor desires to retain his title to the land in the highway or underneath the water the presumption must be negatived by express words or by such a description as clearly excludes it from the land conveyed.   And, at least, ordinarily the same rule applies to grants from the State except as to the Hudson and Mohawk rivers which, because of historical reasons, are governed by special rules.   ' What then was the extent of the premises thus granted by the State?   In the terms of sale, and in the terms employed in the patent, a phraseology has been adopted, which, as between private individuals, would convey an interest to the middle of the river.   And is the doctrine to be tolerated which shall assign one construction to a contract between private citizens, and a different one between an individual and the government?   Would not the adoption of such a rule of construction operate as a fraud upon a purchaser who should pay an enhanced price for land adjacent to a stream of water upon the faith of a contract, which, as between private individuals, would have given him valuable hydraulic privileges?   It seems to me that but one answer can be given to these questions.' "   (Citing cases.)

Applying these established rules, we are called upon to determine whether the grant by letters patent to the defendants' predecessor in title, Gerritt Smith, carried title to the bed of Crumhorn lake to the center thereof as lot 52 adjoined the lake.   We find that the Commissioners of the Land Office, acting for the State of New York, granted six letters patent to different individuals for the six lots bordering upon the lake.   The letters patent to Winsor of lot 53, to Crouch of lot 14, to Smith of lot 52, and to Crandall of lot 16, run to the " pond " or " lake."   Clearly and unquestionably the letters patent described the lands conveyed as running to and touching the waters of the lake.   We find that five of the letters patent, after running the line to the lake or pond, continue the line with the words " thence around " the shore.   The words " by," " on " and " along," used in descriptions, have been

clearly interpreted. " Around " is defined as encircling or encompassing. Used in connection with the continuation of a boundary line which is extended to the water, it seems to us no possible construction can be given to the use of the word " around " other than that it was intended to encircle or encompass the shore by running the line from the point where it touched the water of the lake or pond at the inner edge of the water and outer edge of the shore along such edge to the next described corner. To hold otherwise, it is difficult to conceive where the line could possibly have been intended to run on any of the patents mentioned. If one line ran to the water of the lake, it clearly was not intended to move the line back from the lake in order to follow to the point of beginning.

The first letters patent for lands adjoining the lake were issued to Winsor in 1829, and the last patent to Cable in 1851. When the six lots had been granted to the patentees the State had parted with its title to every foot of land which adjoined Crumhorn lake or pond, and without the reservation of any right of access to the waters of the lake over the lands which it had granted to its patentees.

The conclusion is irresistible that in granting the patents, the Commissioners of the Land Office, representing the State, had no intention of reserving or excepting the bed of Crumhorn lake or pond, but made the conveyances subject to the application of the general rule established relative to conveyances of lands adjacent to such bodies of water. That this conclusion is correct is confirmed by the language of the letters patent to plaintiff's predecessor in title, David Wilber, and upon which her right to the lake and the entire bed thereof depend.

The letters patent issued to David Wilber on the 16th day of June, 1886, were entirely quitclaim in form. This would not be conclusive, as patents are issued generally quitclaim in form, except for the fact that it confirms the conclusion that only such rights as the State possessed (and whether it possessed rights was very questionable) were conveyed by the patent. The instrument contains a specific provision that " these presents shall in no wise operate as a warranty of title." It also contains a specific exception and reservation " to the adjacent riparian and upland owners of lands along and upon said Crumhorn Pond or Lake, and their heirs and assigns, at all times and seasons of the year, full and free access to the waters of said Pond or Lake, for the purpose of watering live stock, and all such other rights, liberties and privileges to the use of the waters of said Pond or Lake as they were entitled to prior to June 16th, 1886." This instrument was a clear specific recognition of rights in the adjacent riparian and upland owners.

If the letters patent theretofore issued conveyed no rights in the lake; if the description excluded any possible construction that it touched or was bounded by the waters of the lake; if the State did own the lake in the sense of the Commissioners of the Land Office having the right to convey it, why is there contained therein full and explicit recognition of the rights of the riparian owners? It seems to us there can be but one answer, and that is, such riparian owners under their patents were entitled to the use of the waters of the lake and had title to the bed thereof to the extent of the lots granted to them and extending to the center of the lake.

At the time plaintiff's predecessor in title, David Wilber, applied to the Commissioners of the Land Office for the sale of the lake he had acquired and was the owner of all the right and title of the adjacent and riparian owners who had been granted letters patent to lands adjoining and bordering upon the lake, except those who had succeeded to the rights and title of Gerritt Smith, the patentee of lot 52.

It is our conclusion that the patents granted to all of the riparian and adjacent owners carried title to the center of the lake, and that such was the purpose and intention of the conveyances.

We deem it unnecessary to determine whether the Commissioners of the Land Office had power to grant and convey the lake by conveying the land under the water. (Getman on Title to Real Property, App. XIII, History of Water Grants, pp. 673–717.) The possession of such power is more than doubtful.

It is unnecessary to determine whether the defendants may attack the validity of the patent to David Wilber collaterally in this action. It has been held that where there is a subsequent grant made from the State by the Commissioners of the Land Office, and the State has no title to convey, and the defect appears upon the face of the patent, it may be impeached collaterally. (*Saunders* v. *New York Central & H. R. R. Co.*, 144 N. Y. 75, 84, 85; *Wheeler* v. *State*, 190 id. 406; *Lally* v. *New York Central & H. R. R. Co.*, 123 App. Div. 35; *Grace* v. *Town of North Hempstead*, 166 id. 844.)

We deem it unnecessary to pass upon the validity of the letters patent, for the reason that the construction of the instrument itself clearly indicates that there was no intention to do more than release such rights, if any, as the State still possessed, and because of the specific exception and reservation as to the rights of the adjacent riparian and upland owners. If the State had any rights in Crumhorn lake or pond, or the lands constituting the bed thereof, the Commissioners of the Land Office quitclaimed and released such rights. If no such rights existed, and if no title was vested, the

letters patent conveyed absolutely nothing to the patentee, and it was so provided by the very terms of the letters themselves.

We, therefore, to briefly enumerate, hold and decide that the plaintiff, as the successor in title of David Wilber, is the owner of all that portion of lots 13, 14, 16, 51 and 53 adjacent to Crumhorn lake or pond, and as such riparian and upland owner owns the bed of the lake to the center thereof, with full and exclusive right to the use of the waters thereon; that the defendants, as the successors in title of Gerritt Smith to lands of lot 52, are the owners of the bed of Crumhorn lake or pond to the center thereof, opposite and as the same adjoins lot 52, and as such riparian and upland owners are entitled to the use, free and unrestricted, of the waters of said pond or lake over the bed thereof so owned by them.

We hold the plaintiff has failed to establish facts sufficient to constitute a cause of action against the defendants or any of them, and that the complaint should be dismissed upon the merits, with one bill of costs.

We have indicated upon pages 14, 112, 113 and 213 of the minutes, rulings on motions upon which decision was reserved.

Directed accordingly.