## TEXARKANA & FT. S. RY. CO. v. BLAND, County Judge, et al.   (No. 403.)

(Court of Civil Appeals of Texas. Beaumont. May 10, 1918. Rehearing Denied Oct. 9, 1918.)

1. PUBLIC LANDS ☞172(11)—RIGHT OF WAY OVER—WIDTH.

Under Rev. St. 1911, art. 6482, giving railroads right of way over public lands, a railroad, which constructed its main line over a hundred foot right of way condemned through private lands, is entitled to a right of way of like width only over adjacent public lands against a county seeking to open a road.

2. PUBLIC LANDS ☞172(11) — WIDTH OF RIGHT OF WAY—BURDEN OF PROOF.

A railroad, claiming, under Rev. St. 1911, art. 6482, a right of way over public lands in

excess of the hundred foot width which it condemned over private lands for its main line, had the burden to show the necessity for a way over public lands exceeding 100 feet in width.

3. RAILROADS ⊙�longrightarrow73(1)—EXCLUSION OF TRESPASSERS—RIGHT OF WAY.

A railroad company may exclude trespassers from its right of way, and take reasonable steps to effect that purpose and protect itself therefrom.

Appeal from District Court, Orange County; W. T. Davis, Judge.

Suit by the Texarkana & Ft. Smith Railway Company against D. C. Bland, County Judge, and others. From judgment for defendants, plaintiff appeals. Affirmed.

Orgain, Butler & Bolinger and Y. D. Carroll, all of Beaumont, for appellant. Holland & Holland, of Orange, for appellees.

BROOKE, J. This suit was instituted by the appellant, Texarkana & Ft. Smith Railway Company, on January 5, 1918, by presenting its original petition for injunction to the Hon. W. H. Davidson, judge of the Fifty-Eighth district court of Jefferson county, Tex.; it being alleged in said petition that Hon. W. T. Davis, judge of the district court of Orange county, was inaccessible for the purposes of said injunction, within the provision of the statute in such cases. The defendants were the county judge and county commissioners of Orange county, Tex. The injunction was sought to prevent the county *commissioners and county judge from* constructing a public road over certain lands in Orange county, Tex., claimed by the plaintiff as a right of way. By plaintiff's first supplemental petition, the controversy resolved itself into a question of plaintiff's right to prevent the defendants from locating a public road on land claimed by it as a right of way across three sections of land in Orange county, same being section 16, International & Great Northern Railway Company, section 21, Texas & New Orleans Railroad Company, and section 10, International & Great Northern Railway Company, as shown by agreement on which the hearing was held. The agreement was as follows:

"It is agreed for the purposes of this motion to dissolve the injunction only, that the blueprint plat attached hereto is a correct description and delineation of the lands in controversy.

"As to section No. 11, International & Great Northern, the plaintiff owns by deed a 100-foot right of way, which is not touched by the proposed public road. As to section 16, International & Great Northern Railway Company, section 21, Texas & New Orleans Railroad Company and section 10, International & Great Northern Railway Company, plaintiff has such right of way as was given by the statute as to public lands; that since its survey and the building of its railroad, plaintiff has been in possession of said land by its main line of railroad track crossing same, as shown on said plat, and operating its trains thereover, claiming a right of way 200 feet in width across said lands, and that at the time said railroad was surveyed and built, said sections above referred to were public lands of the state of Texas; that defend-

ants have surveyed across said lands a public road, and are attempting to lay out and construct same with its nearest edge 50 feet from the center line of said plaintiff's track, and upon the land on said sections claimed by plaintiff as right of way aforesaid, said road paralleling said plaintiff's said railroad track through said sections; that such land has not been condemned by defendants, and said plaintiff has not consented to the construction of said road."

On March 21, 1918, after a hearing, the injunction issued by the judge of the Fifty-Eighth district court was in all things dissolved, but was continued in force pending this appeal, which was had in due time.

The assignment is that the judge of the district court of Orange county, Tex., erred to the prejudice of appellant here in refusing to sustain and in dissolving the temporary injunction issued in this cause by the judge of the Fifty-Eighth judicial district of Texas on January 15, 1918, for the reason that under the statutes of the state of Texas *in force at the time appellant acquired its* right of way across the land in controversy, appellant, by force of such statutes and its survey and claim to such right of way, was vested with title for right of way purposes to a strip of land 200 feet in width across the land in controversy, of which right of way appellant was entitled to the exclusive possession, and the threatened acts of defendants herein were an unwarranted and illegal interference with appellant's right to the exclusive possession thereof. The proposition under this assignment is that under the law in force at the time appellant's line of railroad and right of way were surveyed and appropriated by it, appellant was vested by law with a right of way 200 feet in width across all lands belonging to the state of Texas.

From the pleadings and facts, one question is presented to this court for decision, to wit: Does the statute grant to railroads building across the public lands with the main line, ipso 'facto, a 200-foot right of way across such public lands? It will be borne in mind that the lands here in dispute are crossed only by appellant's main line of railroad, and there is in this record no contention nor proof that there exists a necessity for a 200-foot right of way. There is in this record no proof of any necessity for obtaining material in the proper maintenance of its road from a right of way to such width, and it is shown that in the acquisition of its *right of way from private owners*, the railroad acquired and owns a right of way 100 feet in width. In 1879, Revised Statutes 1911, art. 6482, was passed, reading as follows:

"*Right of Way over Public Lands.*—Every such corporation shall have the right of way for its line of road through and over any lands belonging to this state, and to use any earth, timber, stone or other material upon any such land necessary to the construction and operation of its road through or over said land."

---

⊙�longrightarrowFor other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Prior to the passage of this statute, railroads had the implied authority to construct their lines over the public domain, and from a reading of the authorities it seems to be doubtful that the statute extended to railroads any greater right than existed prior to its passage. Ayres v. Railway Co., 39 Tex. Civ. App. 561, 88 S. W. 436. Prior to the passage of the statute quoted above, that is, prior to the passage of article 6482, railroads were built under special charter, which special charter could confer the limit of the powers to be exercised by such roads in their construction and operation. In some of these special charters a 200-foot right of way was provided for. In others a less width was permitted. In the case of Ayres v. Railway Co., supra, it appears that the special charter upon which the railroad was constructed gave to it a right of way 50 yards, or 150 feet, in width. In going over the field, in an effort to ascertain the probable meaning of the statute above referred to, no opinion that we have access to, or to which we have been cited, undertakes to define in special terms what is intended to be conveyed by the statute. It will be borne in mind that in 1876 the Legislature, in article 6484 of the Revised Statutes, which, it is contended, should be read in connection with the aforesaid statute, enacted the following law:

"Such corporation shall have the right to lay out its road not exceeding 200 feet in width, and to construct the same; and for the purpose of cutting an embankment, to take as much more land as may be necessary for the proper construction and security of its railway, and to cut down any standing trees that may be in danger of falling upon or obstructing the railway, making compensation in the manner provided by law."

Article 6484 has reference only to the acquisition from private parties of lands by railroad corporations in the construction of their roads, and the only statute which it is claimed would give the right to the appellant is article 6482, which has been heretofore set out. In other words, the only statute passed by the Legislature in Texas with reference to the right of way over public lands was and is limited to the language set out above.

[1] In considering, therefore, what is meant or intended to be meant by the Legislature in the use of the words, "shall have the right of way for its line of road through and over any lands belonging to this state, and to use the timber, stone and material upon such land necessary to the construction and operation of its road through and over said land," the only light obtainable is to be found in the Ayres Case, supra, and which it may be well to set out at some length, in order that e may be guided by such light as it may throw upon the instant case. The facts in that case were as follows:

"In 1866 the Great Northern Railroad Company obtained a charter from the state of Texas empowering it to construct a railroad through the county of Montgomery, and to other points not necessary to be disclosed. By 1871 it had constructed the road, and begun its operation. In 1879, it sold its road and franchise to the International & Great Northern Railway Company, which continued the operation of the road up to the time of the bringing of this suit. Inasmuch as the defendant Santa Fé Company holds only under and by virtue of the rights of its codefendant, we do not further state its connection with this case. At the time of the construction of the road in question the land was a part of the public domain. The charter of the Great Northern Company was special, and authorized it to acquire a right of way along its route, not to exceed 50 yards in width, but contained no express and unequivocal terms or donation in that respect. The Wilson Lang survey was patented in November, 1873, and was described as lying on the Great Northern Railroad. In March, 1887, the plaintiff acquired the Lang survey, moved upon the tract, and has occupied it ever since. The town of Conroe, * * * the county seat of Montgomery county, was established after appellant's purchase, and is partly on the Lang survey. It is situated at the intersection of the roads of the two defendants. In 1888 or 1889 appellant platted a part of the Lang survey into town lots, and began to sell them according to the plat. This plat recognized the right of way of the Great Northern as having a width of 65 feet from the center of the track each way, the lots abutting on the right of way according to that width. Plaintiff testified that he saw the road in 1872. It was completed and the right of way cleared at that time. It has been kept cleared ever since in the general maintenance of the line, but a little wider now than then. The general width to which the right of way has been cleared and maintained through the Lang survey for years is at least 130 feet. Whether the possession of this, uninclosed as it was, was of such continuous character as to sustain the plea of limitation to the entire width, may well be doubted, but that the railway company, in the exercise of its charter powers, took possession of a right of way at least the width awarded by the court, is to our minds established beyond controversy. This being true, if the authority given by the state to construct the road through Montgomery county, and to that end to acquire a right of way not to exceed 50 yards in width, carried with it either directly or inferentially a grant of right of way through and over such tracts on its route as were yet a part of the public domain, the judgment should be affirmed whatever may be the state of the proof on the issue of limitation. Article 4423 of the Revised Statutes, which became a law in 1879, expressly gave to railway companies a right of way through the public domain. Prior to that time there had been no express provision on the subject; so it follows that the defendants are unaided by the article cited, or anything of a like nature preceding it. As stated, however, in Tex. Cen. Ry. Co. v. Bowman (Tex. Sup.) [97 Tex. 417] 79 S. W. 296: 'The general laws which had been enacted regulating railways theretofore seem to have assumed, rather than to have expressly declared the existence of the right over the lands of the state, for the provisions for the acquisition of such rights by purchase or condemnation applied only to private property. The general law passed in 1876 for the chartering of railway corporations omitted any express provision as to right of way upon lands belonging to the state, but, as before, regulated the acquisition of such right over private property.' Justice Williams, after this comment upon the state of the law, proceeds to show that the absence of any provision for the acquisition of right of way over public properties pervaded all general legislation on the subject until the Revision of 1879. While it is not expressly held, nor was it necessary to be decided in the case cited,

it is inferentially held that prior to the passage of the act a charter authorizing the construction of a railway through a country held in part by private ownership and in part by the state, the general laws providing for acquisition of right of way from private owners, but leaving the company powerless against the lands of the state, impliedly granted the right to construct through and over the public domain. The grant is so necessary to the exercise of the general power conferred it is inevitably carried by the general terms of the grant. This is in accord with the elementary rule of construction that a power necessary to the exercise of a power already granted will be implied. We are of opinion, therefore, that by its charter the Great Northern Company acquired the right to enter upon and appropriate so much of the public domain over which its route was projected as was necessary for its right of way, not to exceed the prescribed width, and that, having done so, the width actually appropriated was not affected by the subsequent grant by the state of the Lang survey."

And in the instant case, we are of opinion that the Texarkana & Ft. Smith Railway Company acquired the right under the statute, and even by inference before this statute was passed to enter upon and appropriate so much of the public domain over which its route was projected as was necessary for its right of way.

As to what width was actually appropriated does not appear in the statement of this case. We do not mean to say that the statement leaves any doubt as to the width claimed by the appellants, but as to the evidence of the intention to appropriate and utilize this record is silent. What was the intention of the appellant railway company at the time it entered upon this public land so granted by the state of Texas? The statement of facts will show that the railway company had been in possession of said land by its main line of railroad track crossing the same, and operating its trains thereover, claiming a right of way in width 200 feet. The railway company acquired by purchase from private individuals, or by condemnation proceedings, a right of way for said main line 100 feet in width. The said main line of appellant does not consist of a larger area than that acquired from said individuals, save and except the 200 feet which they are claiming by right of the fact that they entered upon and acquired an easement to, over the public lands of this state. As evidencing the fact as to what was the intention of the railway company when it entered upon the aforesaid public land, outside of the fact that it was running the line of its track over the same, there is nothing to indicate how much land it claimed for its said right of way; that is to say, it being through a wooded country, there was nothing visible to the eye either to show that they claimed 200 feet or any other specific amount. If there had been a right of way cleared, if the land had been fenced, if there had been anything of any kind or character whatever done to show that when the railway company entered upon said public land it was claiming 200 feet in

width, if the fact that the roadbed had been uniformly of the extent of 200 feet, it would evidence, to our minds, a different state of facts to that obtaining here. On the contrary, in this case we find the 100-foot limit applied, as a matter of fact, only to the condemnation of private property, while they had it in their power, either by purchase or condemnation, to obtain a 200-foot limit for the operation of said line of railroad. Their intention to claim from the state 200 feet, therefore, cannot be said to be evidenced by their acts in only condemning or acquiring by purchase 100 feet for right of way purposes, and for the maintenance of said railroad, but rather goes to show to our minds that only 100 feet in width was necessary and requisite for the proper construction of the right of way across and through the said country, it not being shown by the evidence that any additional space was needed, either for the construction or the operation of said railway company. To say, therefore, that the appellant, when it undertook to lay out its line of road, by purchase from private parties, only required a space 100 feet for its roadbed, but when it entered upon the public lands of this state, it required 200 feet, in our opinion, would be equal to saying that when the road and its requirements made it necessary, by private purchase, only 100 feet in width was required, but that the state of Texas, in the gift of the right of way, ought not to confine it to 100 feet, but would not only give to the railway company the 100 feet required, but go beyond that and give a bonus of 100 feet for going across the public domain. Not only can the contention not be made successfully on the ground that a uniform width is necessary for the construction and operation of the railroad, but it occurs to us that when public domain has been entered upon, and so much appropriated as is sufficient, as shown by the facts, for the construction and operation of the railroad company, that to go further, in the absence of a specific grant by the Legislature, would be to go far beyond not only an expressed, but an implied, intention of the lawmaking power.

[2, 3] The cases cited by the appellant have been diligently read, but it is apparent to our minds that none of them sustain the contention of appellant that by the simple building of its main line track across the public lands of Texas it would acquire, under the statute in force in 1879, 200 feet of right of way. There is in such statute no express donation or grant of a right of way of any such width, or any other width, and as it is dependent for its rights alone upon this statute, it can acquire no greater rights than conferred upon it by this statute. That it does acquire a right of way over these lands is not disputed, but the extent of that right of way would be controlled by the necessities of the case, and where there is no necessity shown for a right of way exceeding

100 feet in width at the time of the taking, and where the right of way is shown at other places to be 100 feet in width, so selected and acquired from private owners by the railroad, the burden being in this instance upon the railway company to show if there is a necessity for a right of way exceeding 100 feet in width, it must be held, in our opinion, that the right of way through the public lands of this state should be limited to conform to and be the same as those acquired by the road from private holders, in the present case 100 feet in width. In this case, it being admitted that the 100-foot right of way is not crossed by appellees in their proposed road, appellant could have no right to interfere with the construction of such road, although it is well settled in this state, in our opinion, that from the right of way of a railway company it may exclude trespassers and take reasonable steps to effect that purpose and protect itself therefrom. However, in dealing with the case as presented, the one question alone, in our opinion, settles the controversy; and the appellant having shown no right to interfere with the construction of the road, as prayed for, the judgment of the lower court is in all things affirmed.

Chief Justice HIGHTOWER felt that he should recuse himself in this case, and did so, and did not participate in its disposition.

⊛⊐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes