**MILLMEN UNION, LOCAL 324, AFL, et al.**
**v. MISSOURI–KANSAS–TEXAS R. CO.**
**OF TEXAS.**

No. 3052.

Court of Civil Appeals of Texas. Waco.

Nov. 20, 1952.

Rehearing Denied Dec. 11, 1952.

Mullinax, Wells & Ball, Houston Clinton, Jr. and L. N. D. Wells, Jr., Dallas, for appellant.

Naman, Howell & Boswell, Waco, G. H. Penland, Dallas, for appellee.

TIREY, Justice.

This is an appeal from a final judgment granting a permanent injunction against certain picketing by appellants upon appellee's private right of way. The cause was tried without the aid of a jury and upon stipulations of the parties.

The court in its decree found:

"(a) The defendants, their agents, servants, employees and representatives have been unlawfully picketing and will continue to unlawfully picket on plaintiff's right-of-way property abutting the Wm. Cameron & Co. planing mill property between 26th Street and 23rd Street and from the west line of 26th Street to 28th Street in the City of Waco, Texas, unless enjoined therefrom.

"(b) That as a result of said picketing the plaintiff's switchmen employees have refused to move freight cars to and from said Wm. Cameron & Co. mill properties because of their refusal to cross said picket lines; that plaintiff under said circumstances in order to deliver said freight service must assemble volunteer crews from its supervisory personnel which is both burdensome and expensive to plaintiff and that plaintiff will suffer irreparable injury, loss and damage unless the defendants are enjoined from picketing on its right-of-way property as aforesaid and that plaintiff's remedy at law is inadequate.

"(c) That plaintiff has no labor dispute or controversy with the defendants or any of its employees in any way connected with or involving the defendants herein and that none of the defendants are employees of the plaintiff.

"(d) That said picketing upon the part of the defendants, their agents, servants, employees and representatives constitutes an unlawful use of plaintiff's private property and an unlawful interference with the obligation of plaintiff as a common carrier and that said acts and conduct are without the consent or permission of plaintiff.

"(e) That the stipulations of the parties on file herein are considered by the court to be sufficient to justify the issuance of injunctive relief as prayed for by plaintiff * * *."

"The court ordered the employees "to desist and refrain from picketing on plaintiff's railroad right-of-way abutting the Wm. Cameron & Co. planing mill property between the east line of 26th Street and the west line of 23rd Street and between the west line of 26th Street and the east line of 28th Street in the City of Waco, Texas, from entering or being upon plaintiff's said right-of-way property as hereinabove described and from interfering or attempting to interfere with the movement of any of plaintiff's agents, servants, and employees · and trains

and cars upon said right-of-way property as hereinabove described, and that this injunction shall not apply to lawful picketing of defendants on any public street or alley or other location except upon said railroad right-of-way property between public streets as hereinabove described and that all costs incurred herein be taxed against the defendants for which let execution issue * * *."

(The findings in the decree are not assailed by appellants, and since the trial was non-jury they are bound by the rule in Cavanaugh v. Davis, 149 Tex. 573, 235 S. W.2d 972, and Woodward v. Ortiz, Tex., 237 S.W.2d 286. See also Abilene Hotel Corp. v. Gill, Tex.Civ.App., 187 S.W.2d 708, point 6 (writ ref. w. o. m.); also cases collated in 4 Texas Digest, Appeal & Error, ☞931 (1-3).

The decree is assailed on the ground (Point 1) that "the trial court erred in issuing permanent injunction since said injunction deprives appellants of their exercise of freedom of speech guaranteed by the First and Fourteenth Amendments of the Constitution of the United States and by the Constitution of the State of Texas, Vernon's Ann.St."

■ It is our view that Point 1 is not applicable to the factual situation here presented and it is overruled. The findings in the decree show that appellants were guilty of a trespass while they were engaged in picketing on appellee's right-of-way and the decree specifically restrains them from so doing and specifically shows that the injunction does not apply to picketing that is lawful on any public street or alley or other location except upon the right-of-way of the railroad between the public streets therein specifically designated. We are unable to see how the decree contravenes any part of the First and Fourteenth Amendment to our Federal Constitution, or any part of our State Constitution. On the contrary, we think it is in complete harmony with the provisions of each of them, as well as the spirit thereof. It is certainly in accord with the general welfare clause. Appellants' right to picket is in nowise restrained except when they are

452

trespassing on the property of a third party, not involved in the strike, against such third party's will. However, it is our view that the picketing by the employees of Cameron on appellee's right-of-way contravenes the last clause of Art. 5153, Vernon's Ann.Tex.Civ.Stats., which provides that "Such member or members shall not have the right to invade or trespass upon the premises of another without the consent of the owner thereof." Appellants' contention would certainly nullify such provision of the statute and defeat the intent of the legislature and the public policy there declared. Our legislature has the right to fix the public policy of our state and it is the duty of the courts as well as our citizens to abide by it. The stipulations and the findings of the court show that the railroad company was being interfered with by the picketing pursued by the employees of Cameron, and the railroad suffered inconvenience and unnecessary expense by reason of such picketing. The railroad lawfully had and exercised complete control of its right-of-way and the action of the employees of Cameron, as stipulated and as found by the court, did interfere with the railroad in the exclusive control of its property and to its detriment in its use in the pursuit of its lawful purposes.

Appellants in their argument say: "It is elementary that peaceful picketing for lawful purposes in connection with a bona fide labor dispute 'is one phase of the right of free speech guaranteed * * * by the First Amendment to the Constitution of the United States, which under the Fourteenth Amendment, no state can abridge,'" and further contend in effect that its acts and conduct in picketing were terminated by the injunction and that their pickets met all of the essential attributes of legality, to come within the protective cloak of the Constitution, because their picketing was peaceful and in conjunction with a bona fide labor dispute. We have no quarrel with the foregoing general statement, but in view of the stipulations here and the findings of the court it has no application to the case at bar. Appellants were on the private right-of-way of appellee engaged

in picketing, without the consent of appellee, by reason of the strike of the employees of Cameron Mills. We know of no rule of law or well considered decision authorizing anyone to go upon the property of a third party, not a party to the controversy, without his consent for the purpose of picketing or otherwise and thereby inconveniencing such third party to his detriment in the lawful exercise and use of his property. Such a rule of law would authorize one in the exercise of his freedom of speech to deprive such third party of the exclusive control and use of his private property. The decree of the court seeks to avert such wrongful conduct.

Appellants rely on the opinion of our Supreme Court in Ex parte Henry, 147 Tex. 315, 215 S.W.2d 588, and cases there cited. We have carefully reviewed this opinion and we do not think it is in point and applicable here. As we understand the opinion, the place where the picketing occurred was a public street and the railroad company's tracks were on this public street. The court said that so long as pickets did not physically obstruct the spur tracks and mutilate or seriously impair the rights of the railroad to use the streets, they had the same right to use the street as the railroads had, consistent with the peculiar and essential differences in the means and manner of its use by them and by the railroads. The court then stated in effect that when the trial court ordered the relators not to picket within 100 feet of the railroad tracks the railroad was using or was about to use, such holding was an abridgement of the right of free speech guaranteed by the Constitution to them. Our view is that the stipulation of the parties and the findings made by the trial court pointedly distinguish the factual situation in the case at bar from the Henry case. All of the cases cited by Justice Brewster in the above case involved picketing on public streets, so it is our view that such opinion is not applicable and controlling here.

■ Since the stipulations show and the court found that appellants' pickets invaded and trespassed upon the premises of appellee without the consent of the appellee, such picketing brought them within the last pro-

vision of Art. 5153, supra, and it is our view that such statute is constitutional. It contravenes no legal right of the employees of Cameron engaged in the picketing, and at the same time protects the railroad company in the enjoyment of the legal purposes for which it paid for and holds its right-of-way and at the same time enables it to discharge its legal obligation as a common carrier. We see no infringement here of our Federal Constitution. We are of the further view that such statute by its terms is merely declaratory of the common law as found in all Anglo-American jurisdictions. Being of such view, it follows that appellants have no defense for their action in this behalf. The foregoing view is in harmony with the general, statement of the rule as to picketing as made by the United States Supreme Court in Hughes v. Superior Court of California in and for Contra Costa County, 339 U.S. 460, 70 S.Ct. 718, 721, 94 L.Ed. 985; "And we have found that because of its element of communication picketing under some circumstances finds sanction in the Fourteenth Amendment. Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093; American Federation of Labor v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855; Bakery & Pastry Drivers & Helpers Local v. Wohl, 315 U.S. 769, 62 S.Ct. 816, 86 L.Ed. 1178; Cafeteria Employees Union v. Angelos, 320 U.S. 293, 64 S.Ct. 126, 88 L.Ed. 58. *However general or loose the language of opinions, the specific situations have controlled decision. It has been amply recognized that picketing, not being the equivalent of speech as a matter of fact, is not its inevitable legal equivalent. Picketing is not beyond the control of a State if the manner in which picketing is conducted or the purpose which it seeks to effectuate gives ground for its disallowance.* [Citing cases.] *'A state is not required to tolerate in all places and all circumstances even peaceful picketing by an individual.'* Bakery & Pastry Drivers & Helpers Local v. Wohl, supra, 315 U.S. at page 775, 62 S.Ct. [816] at page 819, 86 L.Ed. 1178." [Underscoring ours.] The foregoing statement of the United States Supreme Court has not been overturned, and although the state-

ment is general we think it is peculiarly applicable here.

Appellants rely upon the case of Thornhill v. Alabama, supra. This case was discussed by Justice Brewster in the Henry case and has been cited many times by our United States and State Supreme Courts. As we understand the Thornhill case, it was dealing with picketing that took place in a public street. The Supreme Court of the United States there said [310 U.S. 88, 60 S.Ct. 746]: " * * * (The) streets are natural and proper places for the dissemination of information and opinion; and one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." We do not think the pronouncements in the Thornhill case are applicable here.

In the case of Marsh v. State of Alabama, 326 U.S. 501, 66 S.Ct. 76, 90 L.Ed. 265, the court was dealing with a Jehovah Witness who was standing on the public street in front of the Federal Post Office in the town of Chickasaw, Alabama, and was distributing religious literature in violation of a city ordinance. It is obvious that such factual situation distinguishes it from the case at bar and the Marsh case is no authority for appellants' contention that its pickets can trespass on the private property of the railroad. It is true that Chickasaw was a company owned town, but there is no similarity between the streets of a company owned town and appellee's private right-of-way.

Appellants cite the case of N.L.R.B. v. LeTourneau Co., 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372, and N.L.R.B. v. Cities Service Oil, 2 Cir., 122 F.2d 149. We have carefully read these cases and do not think they are applicable to the situation here before us and it would serve no useful purpose to review them and it would unnecessarily burden this opinion.

Our view here is supported by the following well considered cases: Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834; Hughes v. Superior Court, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985; International Brotherhood of Teamsters v. Hanke, 339 U.S. 470, 70

S.Ct. 773, 94 L.Ed. 995; Building Service Employees International Union v. Gazzam, 339 U.S. 532, 70 S.Ct. 784, 94 L.Ed. 1045; N.L.R.B. v. Denver Building & Construction Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284; International Brotherhood of Electrical Workers v. N.L.R.B., 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299; North East Texas Motor Lines, Inc., v. Dickson, 148 Tex. 35, 219 S.W.2d 795; Construction & General Labor Union v. Stephenson, 148 Tex. 434, 225 S.W.2d 958; Best Motor Lines v. International Brotherhood of Teamsters, Tex., 237 S.W.2d 589. See also the following law review articles discussing picketing and free speech: "Thornhill to Hanke—the Picketing Puzzle", Weinberg, University of Cincinnati Law Review, Vol. 20, pp. 437–482; "Picketing and Free Speech", Williams, 30 Tex. Law Rev. 206; "Picketing—Is It Still Free Speech", 39 Georgetown Law Journal 114. See also Injunction Against Picketing, 11 A.L.R.2d 1338–1365.

Appellants' Point 2 is: "The trial court erred in issuing permanent injunction since said injunction deprives appellants of enjoyment of a prescriptive easement over the land upon which appellants were picketing." There is no merit in this contention.

Appellants in their argument say: "The deed under which appellees hold clearly conveys only a right-of-way and not the fee title to the land. It purports to convey that and no more, for the granting clause plainly states that grantors "do grant, bargain, convey and relinquish unto the said Missouri, Kansas and Texas Railway Company the right-of-way over those lands * * *.' "1

█ We think the fee title passed to the railroad company under the rule announced in Calcasieu Lbr. Co. v. Harris, 77 Tex. 18, 13 S.W. 453, and Brightwell v. International-Great Northern R. Co., 121 Tex. 338, 49 S.W.2d 437, 84 A.L.R. 265. See also the well considered opinion of Justice Smedley of our Supreme Court in Texas Electric Ry. Co. v. Neale, 252 S.W.2d 451.

█ However, if we be mistaken in our view and appellee owns only the right-of-way easement for right-of-way purposes, the appellee under such rule still has the right of exclusive possession and under the factual situation had the right to exclude trespassers therefrom. In Uvalde Rock Asphalt Co. v. Asphalt Belt Ry. Co., 267 S.W. 688, 689 (opinion by Com.Apps., adopted by S.Ct.), find this statement of the rule: "A railroad company has the exclusive use of the surface of the land on which its right of way is located, * * *." See also 44 Amer.Jur. 341, Railroads, Sec. 129, for statement of applicable law; also Fort Worth & Denver City Ry. Co. v. Craig, Tex.Civ.App., 176 S.W. 827, point on page 829; Peterson v. Holland, Tex.Civ.App., 189 S.W.2d 94 (er.ref.); Texarkana & Ft. S. Ry. Co. v. Bland, Tex.Civ.App., 205 S.W. 727.

1. The pertinent parts of the deed in question provide: " * * * for and in consideration of the sum of Five Hundred Dollars to us in hand paid by the Missouri Kansas and Texas Railway Company, the receipt of which is hereby acknowledged, have granted, sold, conveyed and relinquished, and by these presents do grant, bargain, convey and relinquish unto the said Missouri, Kansas and Texas Railway Company the right of way over those lands situated in the County of McLennan, State of Texas * * * (here follows description of the land) said right of way herein granted to be One Hundred feet in width through said land, the same to extend fifty feet in width on each side of the center of the track of said railway as the same may be located, together with the use of the wood, water, stone, gravel and other material and privileges useful in the construction and maintenance of said railway pertaining to the land so granted and conveyed. To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said The Missouri, Kansas and Texas Railway Company, its successors and assigns forever; and we do hereby bind ourselves, our heirs, executors, administrators and assigns to warrant and forever defend all and singular the said premises unto the said The Missouri, Kansas and Texas Railway Company, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof."

The stipulations show conclusively and the court found that the continuous presence of the pickets on the right-of-way was an unlawful interference with appellee in the use of its right-of-way and placed a greater burden on appellee than it was required to bear in the lawful exercise of such use and its obligation as a common carrier. Moreover, the permitted, continued use of the right-of-way by the pickets did give to such pickets the status of licensees and did create a higher duty on the part of the railroad to look out for them and to maintain the right-of-way safely for them. The danger of accident to the pickets and to the railroad employees was greatly increased. It is our view that the railroad had the right to exclude appellants' pickets from the right-of-way when their presence increased the burden of the appellee and became detrimental to the best interests of the railroad in the use of its right-of-way.

 Finally, appellants contend in effect that they are entitled to free enjoyment of the pathway heretofore used by them across appellee's right-of-way, which has become an easement over the same. They contend that an easement in the public has been established by prescription and it is their view that such right is established by a stipulation of the parties. We are not in accord with such view. The facts admitted by stipulation of the parties do not establish a prescriptive easement because the user as shown by such facts was not and is not adverse, hostile, uninterrupted, exclusive and continuous as against appellee. At most the facts show a permissive use by some members of the public and in the main those members who were and are employed by Cameron Company of the path in dispute as a convenience in reaching their place of employment. We think the rule is that the requisite elements to establish easement are the same as in the establishment of title by limitation in trespass to try title. See 15 Tex.Jur. 812, secs. 40 and 41. In Bender v. Brooks, 103 Tex. 329, 127 S.W. 168, point on page 170, our Supreme Court held: "In order for possession to be adverse to the true owner, it 'must be of such a character as to indicate unmistakably an assertion of claim of exclusive ownership in the occupant.'" See cases collated in Old National Life Ins. Co. v. Jerusalem Lodge No. 67, Tex.Civ.App., 192 S.W.2d 921 (n.r.e.) point on top of page 928. The rule in Texas is: "Possession in order to be adverse must be exclusive." See Old National Life Ins. Co. v. Jerusalem Lodge No. 67, supra. See also cases collated in Vol. 2, Texas Digest, Adverse Possession, ☞34. Moreover, the use of unenclosed land by members of the public is not considered a user adverse and hostile to the owner. See Nave v. City of Clarendon, Tex.Civ.App., 216 S.W. 1110. See also Johnson v. Krieg, Tex.Civ.App., 175 S.W.2d 102 (er. ref. w. o. m.); Weber v. Chaney, Tex.Civ.App., 5 S.W.2d 213, 214 (er. ref.); Heilbron v. St. Louis S. W. Ry. Co., 52 Tex.Civ.App. 575, 113 S.W. 610, point on page 613. This court in Boone v. City of Stephenville, 37 S.W.2d 842, 844, said: "In order for adverse claim to ripen into prescription, the claim must be continuous and uninterrupted. A single act of acknowledgment by the claimant of the owner's title is fatal to the right." The letter of Mr. Carolan, President of the Millmen's Union,[2] to appellee and the reply

2. "The employees of Wm. Cameron & Co., Waco, Texas, have requested that I ask the railroad company a favor, to provide a foot crossing with a warning signal of approaching trains. We would like to have this crossing arranged about 24th and Jackson Streets, which is the Katy tracks. The reason for this request, Wm. Cameron & Co. have arranged a parking lot for employees just across the Katy tracks, south of Cameron Company factory. Approximately 300 employees, at this time and for past couple of months, are having to walk from inside factory yard, part of them from about 23rd Street through factory to 26th Street, south on 26th Street, then across Katy tracks to 26th Street, back down beside tracks to about 24th Street to parking lot to get their cars. This results in approximately five blocks, four times daily, as most of them go home to lunch at noon.

"When it is raining and cold this makes a very disagreeable situation. I would like to point out that there is another

thereto[3], bring appellants within the above rule. See also opinion of this court in Gill v. Pringle, Tex.Civ.App., 224 S.W.2d 525, point p. 527 (writ ref.) The statements contained in Gill v. Pringle, supra, and approved by the Supreme Court are the last expressions of our Supreme Court on this matter and are controlling here. Our view is that the record here tendered shows that the user of members of the public was not exclusive nor inconsistent with the use of the railroad. On the contrary, the record shows that there was no interference with the railroad's use of its right-of-way until this controversy arose and that the railroad acted promptly to protect its rights. See Ladies Benevolent Society of Beaumont v. Magnolia Cemetery Co., Tex.Com.App., 288 S.W. 812, point on page 815.

Believing that the trial court has correctly disposed of this matter, its judgment is in all things affirmed.

LESTER, C. J., took no part in the consideration and disposition of this case.

parking lot on the west side of 26th Street where a large number of employees' cars are parked, four times daily when these employees are walking across the crossing at 26th Street, automobiles are driving across, which makes an additional danger, having to watch automobiles and trains at this double track crossing. I believe you can see there would be much less danger of getting struck by a train on this double track crossing if the foot crossing could be provided by the railroad company.

"Wm. Cameron & Co. now have a gate at the southeast corner of factory which is just across the tracks from the parking lot, but they refuse to open this gate because there is no foot crossing or warning signal. Since there are no crossings from 20th Street to 26th Street, these employees feel the railroad company will be courteous enough to grant this favor, which we will deeply appreciate.

"I have contacted Mr. L. T. Barrow, General Agent, Waco, and he contacted Mr. Schaller, Superintendent of South Texas Division, Smithville, Texas. I was informed by Mr. Barrow, that at this time the Management did not feel they should spend the amount of money it would cost for the foot crossing.

"Mr. Warden, we will deeply appreciate your making an investigation of this situation as soon as possible.

"Please give us an answer soon. Thanks in advance."

3. "This will acknowledge receipt of your letter of April 18, requesting that we open a foot crossing, with crossing protection for Wm. Cameron Co. workmen just opposite the Cameron mill between 24th and 26th Streets.

"This crossing with automatic protection would cost us more than $5000, and our management does not feel justified at this time to spend this amount of money due to the fact that 26th Street crossing is protected with automatic signals, and can be used for this same purpose.

"I am very sorry indeed to have to report this unfavorable information to you, but we do appreciate you calling on us and do hope that we may be able to serve you in future problems."