Oliver W. FANNIN, Jr., et ux., Appellants,

v.

SOMERVELL COUNTY, Texas, et al., Appellees.

No. 4833.

Court of Civil Appeals of Texas, Waco.

Feb. 5, 1970.

Oliver W. Fannin, Jr., Fannin & Fannin, Ft. Worth, for appellants.

Samuel W. Freas, County Atty., Glen Rose, for appellees.

## OPINION

HALL, Justice.

By deed dated September 13, 1965, Earnest Winston Whitaker purported to convey a triangular-shaped one-acre tract of land to Somervell County, Texas, "for a public park."

Appellants brought this action on November 4, 1965, against the County, its County Judge and Commissioners, and Whitaker, alleging that the land in question was owned and occupied by appellants by virtue of their purchase of it and a deed to them from Mr. and Mrs. Doyle J. West dated October 17, 1964; and that the deed from Whitaker to the County constituted a cloud on the title to the tract. They sought to have the cloud removed and title quieted in them.

The defendants, appellees here, generally denied appellant's pleadings; and, by cross-action, alleged " * * * that the tract of land that is subject to this suit has been * * * used * * * by the public for the purpose of traveling from a well-defined and established county road over and across this * * * tract to an area in the Paluxy River commonly known as 'Blue Hole' * * *; that the public has traveled over and upon and across said tract of land for a period of time in excess of ten years from the said county road to the area known as 'Blue Hole' and that all of said use by the public has been open, apparent, notorious, and uninterrupted, and that no claim has been made. There has been a prescriptive easement established and well-defined and known generally."

No exceptions to the pleadings were filed by any party. Trial was non-jury. Other than the findings and conclusions set forth in the judgment, none were made by the trial court nor requested by the parties.

In the judgment, the trial court made findings in support of the relief sought by appellants. The court also found that appellants' title to the acre "is subject to a prescriptive right or easement heretofore acquired by the defendant Somervell County, Texas, for use by the public, under the ten-year statute of limitation, over and along a part of said land for the purposes of camping, fishing and swimming, * *." Judgment was rendered removing the cloud cast upon appellants' title by the Whitaker deed and quieting title to the acre in them, "subject, however, to the prescriptive right or easement heretofore acquired by the defendant Somervell County, Texas, for use by the public for the purposes of camping, fishing and swimming, over and along" a specifically described portion of the tract, containing about ½ acre.

Appellants base this appeal on two principal propositions: (1) That the undisputed evidence shows that the sole use of the acre by the public was for pleasure and recreational purposes, and, "as a matter of law, such use is not sufficient to establish a prescriptive right or easement;" and, (2) that there is no probative evidence of adverse use by the public, generally, or by Somervell County as an entity. We sustain these contentions.

There is no dispute in the controlling facts. The triangular-shaped acre of ground in controversy is located at the northernmost tip of 268 acres owned by appellants. It is bordered on the Northwest by the Paluxy River, on the Northeast by a tract that was owned by the defendant Whitaker (and which the record shows has been purchased by the State of Texas during the pendency of this suit), and on the South, which is the base of the triangle, by a public road known as the "Glen Rose-Paluxy Road." The north corner of the acre is situated on a bluff near an attractive and choice place in the river for swimming that is known as the "blue hole."

The Glen Rose-Paluxy Road veers southwesterly as it nears the western edge of the

acre, and continues in that direction to a point between ¼ and ½ miles upstream, at which point it turns toward a more westerly course and crosses the river at a low-water crossing.

During the period of time from 1920 until 1961, the portion of the acre which bounds the public road was not fenced, and the public used the acre as a way to the river, especially to the "blue hole," for the purposes of swimming and fishing. The public turned off the Glen Rose-Paluxy Road onto the acre near its southwest corner, and crossed it on foot and in buggies and wagons, and later in automobiles, to a parking area near the bluff. Foot trails then led down the bluff to the bed of the river. There was also some use of the acre by the public for camping and picnicking. Identical use by the public was made of the land (now owned by appellants) between the public road and the river from the acre to the point upstream where the road crosses the river. Indeed, Charlie Moss, one of appellees' witnesses, testified that during the time in question the public made the same use of unfenced, private property "for 15 or 20 miles up and down this Paluxy nearly every place on it" that lay between public roads and the river, to get to the river and fish and camp. There is no evidence that any landowner ever recognized any of these ways, or trails, or roads, on their property by fencing the land on either side thereof; and the only evidence in the record in that regard as to the way across the acre in question is that the way was never fenced on either side by any owner of it.

■ "The hostile and adverse character of the user necessary to establish an easement by prescription is the same as that which is necessary to establish title by adverse possession," and such adverse use must be for the full ten-year period. Othen v. Rosier, 148 Tex. 485, 226 S.W.2d 622, 626 (1950). It has been held that the use of a tract of land for hunting and camping, or fishing, does not constitute such adverse possession as would notify the owner that his land was being claimed by another. Nona Mills Co. v. Wright, 101 Tex. 14, 102 S.W. 1118, 1121 (1907) ; W. T. Carter & Brother v. Ruth, (Tex.Civ. App., 1955, no writ hist.) 275 S.W.2d 126, 131.

■ Clearly, under the record, the acre in question, along with other private property similarly located along the Paluxy River, was used by the public solely for recreational and pleasure purposes—that is, for occasional picnicking and camping, and incidentally for getting to and from the river for swimming and fishing—and not for general travel. We are of the opinion, and hold, that this use does not support the prescriptive easement granted to the defendant County by the trial court. See Drye v. Eagle Rock Ranch, Inc. (Tex.Sup., 1963), 364 S.W.2d 196, 205–206, 211; Camp Clearwater, Inc. v. Plock, 52 N.J. Super. 583, 146 A.2d 527, 538 (1958) ; Commonwealth Water Co. v. Brunner, (1916) 175 App.Div. 153, 161 N.Y.S. 794, 798; Mix v. Tice, (1937), 164 Misc. 261, 298 N.Y.S. 441, 448; State ex rel. Shorett v. Blue Ridge Club (1945), 22 Wash.2d 487, 156 P.2d 667, 670.

Moreover, the evidence does not show any public user that was adverse or hostile, rather than permissive, for the full statutory period, if at all.

There is no evidence and no claim that the County, as an entity, has ever made any use of the acre; or that it has ever maintained any entrance onto the acre; or that it has at anytime, in any fashion, maintained the acre for the benefit or convenience of the public. There is no evidence that during the years in question a public way across the acre was actually maintained by anyone. Without dispute, the only maintenance on the roadway across the acre was done by the owners of the property.

All of the appellees' witnesses who testified to the use of the acre by the public stated either directly or inferentially that it was done with permission of the owner.

The following selections are typical of their testimony:

Doyle Cooper testified that he had "* * * hunted fossils and rocks in the creeks and my kids went swimming, and I've been there many times. * * * But since the fence was built, I go on to the low water crossing and go down the river, stay in the riverbed, because if they don't want me on it * * *."

Carl Booker stated that "* * * back in these days people down here just went to and from the river most anywhere they wanted to go" over private property, "unless somebody objected."

Charlie Moss said that he has been "down through the tract lots of times, unless it was fenced off;" but not since it was fenced off; that he owns 75 acres, fenced, on the Paluxy River about one mile up river from the "blue hole;" that members of the public have come onto his property hunting and fishing; that it has never been the custom of property owners to turn anybody down "when they act right."

Zollie Wilkins testified that he has never heard of anybody claiming that they had a right or easement to go across the acre; and that "I wouldn't go down there and it fenced. I didn't."

Eugene Connally stated that he has been across the acre on foot and in cars numerous times, as have others; that he did not claim any right to use of the tract as against the owners; and that the owners had the right to keep him out.

With a single exception,[1] there is no showing that, during the time in question, the owners of the acre interfered with or even protested such public use. To the contrary, the record shows that the use was made at will by members of the public, many of whom came from other areas as vacationers. The witnesses all testified that no one ever "forced them off," or "told them to get off," or "chased them off" or "ran them off," or "denied them access," or "prevented use of the roadway," or "told them to get out."

"The rule is well settled that use by express or implied permission or license, no matter how long continued, cannot ripen into an easement by prescription, since user as of right, as distinguished from permissive user, is lacking." Othen v. Rosier, 148 Tex. 485, 226 S.W.2d 622, 626 (1950).

The record also shows without dispute that during the years relied upon by appellees, the acre was unenclosed, and that the tract, including the roadway in question across it, was actually used during that time by its successive owners.

The permissive use of a way over the land of another contemporaneously with the owner's use of the same way is not adverse; O'Connor v. Gragg, 161 Tex. 273, 339 S.W.2d 878, 881 (1960); and the use of unenclosed land by members of the public is not considered a user adverse and hostile to the owner; Millmen Union v. Missouri-Kansas-Texas R. Co. (Tex. Civ.App., 1952, writ ref., n. r. e.), 253 S.W. 2d 450, 455.

The use of the acre by the public under the circumstances shown by this record cannot and did not ripen into a prescriptive right.

Appellees' cross-point has been carefully considered, found to be without merit, and is overruled. The judgment is reformed to delete therefrom that portion which decrees that appellants' title to the acre is subject to a prescriptive right or easement

[1]. Jack Bridges, who owned the property from March 13, 1953, until September 16, 1959, testified that on one occasion, while he owned the tract, he dragged a log across the entrance, and that someone sawed through the middle of the log and moved it. He also stated, referring to the public, that he "couldn't keep them off;" but there is no evidence of any other effort by him to do so.

in favor of the defendant, Somervell County, Texas, for use by the public for the purposes of camping, fishing and swimming thereon. As reformed, the judgment is affirmed.