

# NUMBER 13-17-00058-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**DANIEL L. PANCAMO,**                                                    **Appellant,**

**v.**

**CALHOUN COUNTY,**                                                    **Appellee.**

## On appeal from the County Court at Law No. 1
## of Calhoun County, Texas.

## MEMORANDUM OPINION

### Before Justices Contreras, Longoria, and Hinojosa
### Memorandum Opinion by Justice Longoria

Appellant Daniel Pancamo appeals the trial court's judgment declaring that a prescriptive easement exists in favor of appellee Calhoun County ("County") for the use of a .7223 acre tract of Pancamo's land located in the County. In one issue, Pancamo contends that the evidence is legally insufficient to support a finding of a prescriptive easement. We affirm.

## I. BACKGROUND

On November 18, 2014, Pancamo purchased, by general warranty deed, a 5.578-acre tract of land in Calhoun County, bordering Olivia Haterius Park and Keller Bay. The deed states that it takes exception to any prescriptive easements located on the property, although there were no recorded easements on the subject property. Two surveys had been prepared for the conveyance of the property; one survey contained the prescriptive easement but the other did not. Contained in this tract of land was a .7723-acre tract of land, which runs across the shoreline of Keller Bay. That land primarily consists of concrete rip rap[1] and a gravel road, which the County claims as a prescriptive easement.

On August 14, 2015, the County filed suit seeking a declaratory judgment that an easement by prescription had been established to the .7723-acre tract. A bench trial commenced on November 14, 2016. Acting County Commissioner Neil Fritsch testified that the County maintained the road in question and emptied the trash barrels therein on a weekly basis. He testified that the public used the easement for recreational purposes and that both the maintenance and public use had continued the whole time he had been county commissioner, from January of 2005 to the present. Commissioner Fritsch stated that Pancamo had attempted to interrupt the public's use of the road by putting up signage and a gate. The sign erected by Pancamo at the entrance to the road stated that it was a "private road, public welcome, security cameras in use and not responsible for accidents." The Olivia Haterius Park Road, as Commissioner Fritsch calls it, is

---

[1] Rip rap is defined as "a foundation or sustaining wall of stones or chunks of concrete thrown together without order (as in deep water); *also* : a layer of this or similar material on an embankment slope to prevent erosion." MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/riprap (last visited Jul. 10, 2018).

frequently submerged by water. Commissioner Fritsch's road crew placed a "watch for high water sign" on the road. According to Commissioner Fritsch, Pancamo wanted the public to only use the road during daylight hours; Fritsch objected to this and said that many people work during the day and would like to fish at night. He also stated, "I was always under the impression that the road was an extension of the park, since the boat ramp, original boat ramp down there, and the public used the ramp for a lot of years; probably thirty-something years before the current boat ramp was built, and the County placed the rip rap along the shore for erosion protection."

Helen Smith, a former County Commissioner, testified that most of the 5.578 acres purchased by Pancamo is tidal wetlands. She testified that she was Commissioner from 1991 to 1998; during that time, the old boat ramp was abandoned and the new boat ramp was constructed in 1996. According to her, the easement in question is the only direct access to the water. Smith claimed that the public had been using the road and that the County had been maintaining the road for thirty-five to forty years. She presumed that the road was a County road because of the nearby park and because the County had always maintained the road.

Pancamo admitted at trial to erecting a gate in front of the road and placing signs that read "no camping" and "day use only." He acknowledged that he saw County vehicles emptying the trash cans on the road. He also noticed that the County graded several potholes located on the road. He testified that he placed cameras so he could surveil the road from his home in Houston.

Cleveland Stevens, who has lived in the Port Alto/Olivia area since 1961, testified

3

that he worked for County Commissioner Wayne Lidsey in 1963. He testified that the public used the road from 1963 to the present. Stevens helped dig the old boat ramp between 1963 and 1972. He testified that the road goes under water with a high tide and often needs maintenance after each high tide. He asserted that there are always people camping and fishing down there.

Dave McKay testified that he worked for the County for thirty years. He averred that the public has used, and the County has maintained, the road for the entire duration he has worked there. He also testified that when the road goes under water, it needs maintenance.

Richard Parrish testified that he is familiar with the road. He goes fishing there and was always under the impression that the County owned the road. Parrish testified: "There's people been fishing down there and I've seen people with RV's that parked down there for a day or two."

Jim Dunlap, an Olivia resident, testified that he goes fishing on the Olivia Haterius Park Road two or three times a week. According to him, the road has been used by the public for thirty-nine years. Dunlap was never aware that it was a private road because it was tidelands. He found signs on the property he assumed were put up by Pancamo. The signs said things like "no fishing," "protected water" and "no vehicles past this point." The signs were removed at some point.

Ray Polensky moved to the Olivia/Port Alto area in 1956. He claims to drive down the Olivia Haterius Park Road every day because that is where he launches his kayak. He testified that he saw a "no trespassing" sign at the entrance to the road but it did not

4

stay long. According to Polensky, the road has been used continuously by the public since the 1960s.

Robert Peterson testified that the public has been using the road for fishing, catching bait, and other recreational purposes since at least 1940.

At the end of the bench trial, the trial court issued a declaratory judgment finding a prescriptive easement existed pertaining to the .7223-acre tract of land. This appeal followed.

## II. LEGAL SUFFICIENCY

Pancamo argues in his sole issue that the trial court erred by finding that a prescriptive easement exists. More specifically, he argues that the Texas Transportation Code precludes finding a prescriptive easement in the present case and that there is legally insufficient evidence of adverse use.

### A. Standard of Review

Declaratory judgments are reviewed under the same standards as other judgments. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.010 (West, Westlaw through 2017 1st C.S.). When a party is challenging the legal sufficiency of the evidence supporting an adverse finding on an issue on which an opposing party has the burden of proof, it prevails if the record shows any one of the following: (1) there is no evidence supporting a vital fact, (2) the evidence offered to prove a vital fact is no more than a mere scintilla, (3) the evidence conclusively establishes the opposite of the vital fact, or (4) the court is barred by law or the rules of evidence from considering the only evidence offered to prove the vital fact. *See City of Keller v. Wilson,* 168 S.W.3d 802, 810 (Tex. 2005);

5

*see also Cambridge Holdings, Ltd. v. Cambridge Condos. Council of Owners*, No. 03-08-00353-CV, 2010 WL 2330356, at *7 (Tex. App.—Austin June 11, 2010, no pet.) (mem. op.). More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997); *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex. 1994).

If the evidence is so weak as to do no more than create a mere surmise or suspicion of its existence, its legal effect is that it is no evidence. *See Haynes & Boone v. Bowser Bouldin, Ltd.,* 896 S.W.2d 179, 182 (Tex. 1995). Conversely, evidence conclusively establishes a vital fact when the evidence is such that reasonable people could not disagree in their conclusions. *See City of Keller,* 168 S.W.3d at 814–17. In conducting a legal sufficiency review, we must consider the evidence in the light most favorable to the trial court's findings and indulge every reasonable inference that would support them. *See id.* at 822. We will uphold a trial court's ruling if it is correct under any legal theory. *See Columbia Med. Ctr. Subsidiary, L.P. v. Meier*, 198 S.W.3d 408, 411 (Tex. App.—Dallas 2006, pet. denied).

**B. Applicable Law**

A county with a population of less than 50,000 can only acquire a public interest in a private road by: (1) purchase; (2) condemnation; (3) dedication; or (4) a court's final judgment of adverse possession.[2] *See* TEX. TRANSP. CODE ANN. § 281.002 (West, Westlaw through 2017 1st C.S.); *see also Wallace v. Kent County*, No. 07-11-00427-CV,

---

[2] It is undisputed that Calhoun County has less than 50,000 people.

6

2013 WL 4531253, at *2 (Tex. App.—Amarillo Aug. 21, 2013, no pet.). As distinguished from the establishment of an easement by implied dedication, where the focus is on the intent or actions of the alleged easement's grantor, an easement by prescription rests on the claimant's adverse actions under color of right. *See Allen v. Allen,* 280 S.W.3d 366, 377 (Tex. App.—Amarillo 2008, pet. denied); *Scott v. Cannon,* 959 S.W.2d 712, 721 (Tex. App.—Austin 1998, pet. denied). A person acquires a prescriptive easement by meeting the requirements for adverse possession: open, notorious, continuous, exclusive, and adverse use of someone else's land for ten years or more. *See Brooks v. Jones*, 578 S.W.2d 669, 673 (Tex. 1979); *Moody v. White*, 593 S.W.2d 372, 377 (Tex. App.—Corpus Christi 1979, no writ). The party claiming the existence of a prescriptive easement has the burden of proof to establish each element by a preponderance of the evidence. *See Brooks,* 578 S.W.2d at 673*.* "[E]vidence of long-continued public use, *standing alone*," is insufficient to support a claim of prescriptive easement. *Barstow v. State,* 742 S.W.2d 495, 50 (Tex. App.—Austin 1987, writ denied) (emphasis added); *see Dailey v. Alarid,* 486 S.W.2d 620, 623 (Tex. App.—Tyler 1972, writ ref'd n.r.e.).

Section 281.004 of the Texas Transportation Code, enacted in 1981, states:

[f]or purposes of this chapter, adverse possession is not established by the:

> (1) use of a private road by the public with the permission of the owner; or

> (2) maintenance with public funds of a private road in which a public interest is not recorded.

TEX. TRANSP. CODE ANN. § 281.004 (West, Westlaw through 2017 1st C.S.).

7

## C. Discussion

Pancamo makes several interrelated arguments as to why the County's evidence was legally insufficient to support a finding of a prescriptive easement: (1) pursuant to Chapter 281 of the Texas Transportation Code, public maintenance of a road does not establish adverse possession; (2) the public's permissive, contemporaneous, and recreational use does not constitute an adverse claim against the land; and (3) the public's use of the land was not continuous or notorious. *See Fannin v. Somervell Cty.*, 450 S.W.2d 933, 935 (Tex. Civ. App.—Waco 1970, no writ) ("The permissive use of a way over the land of another contemporaneously with the owner's use of the same way is not adverse.").

However, this Court has upheld the finding of a prescriptive easement in several cases very similar to the present case. *See Villa Nova Resort, Inc. v. State*, 711 S.W.2d 120, 127 (Tex. App.—Corpus Christi 1986, no writ) (finding that there was legally sufficient evidence to establish easement by prescription because the public swam, fished, camped, hunted, picnicked, and sunbathed on a tract of land for several decades); *Moody*, 593 S.W.2d at 377–78 (finding that the public had obtained a prescriptive easement over the land in question because the general public used the land as their own for hunting, fishing, swimming, boating, and sunbathing for several decades); *see also Ramirez v. Calhoun Cty.*, No. 13-09-00018-CV, 2009 WL 5135632, at *5 (Tex. App.—Corpus Christi Dec. 29, 2009, no pet.) (mem. op.) (finding that there was legally sufficient evidence to establish easement by prescription because the public drove, played, and picnicked on .29-acre tract of land for at least twenty-six years). Even

8

though *Moody* and *Villa Nova Resort* both involved the application of the Texas Open Beaches Act and the present case does not, we find *Moody* and *Villa Nova Resort* instructive because the Texas Open Beaches Act requires courts to determine the existence of prescriptive easements.   *See* TEX. NAT. RES. CODE ANN. § 61.011(a) (West, Westlaw through 2017 1st C.S.); *see also Ramirez*, 2009 WL 5135632, at *12.

Chapter 281.004 of the Texas Transportation Code states that the use of the land must be adverse, not permissive, and that the adverse use of land cannot be based solely on the fact that the County has been maintaining the road.   *See* TEX. TRANSP. CODE ANN. § 281.004.   Therefore, we agree with Pancamo inasmuch as he argues that County maintenance of a road in which no public interest is recorded alone is insufficient to show adverse possession under Section 281.   However, that does not equate to the County's evidence being legally insufficient in this case; as discussed above and below, there is more evidence than mere public use or mere maintenance.   As Pancamo even admits in his brief, "[a] pattern of continued county maintenance is relevant to the issue of whether a prescriptive easement has been established."

Next, Pancamo makes a string of arguments concerning the adverse use of land. First, Pancamo argues that the public's use of the land was permissive because he did not prevent the public from using the land and he used the land contemporaneously in a recreational matter.   *See Fannin*, 450 S.W.2d at 935.   We addressed this issue in *Ramirez*; more specifically, we reasoned:

> "It has long been the law in Texas that when a landowner and the claimant of an easement both use the same [property], the use by the claimant is not exclusive of the owner's use and therefore will not be considered adverse." In *Scott v. Cannon,* the Austin Court of Appeals was asked to determine

9

whether the requirement of exclusivity was proven where the parties involved in the dispute used a roadway jointly. *Scott* distinguished the aforementioned cases by noting that in those cases, "the claimants were trying to establish an easement by prescription based on continuous use alone" and that "[t]here was no evidence in any of those cases other than use of the road to establish an adverse claim of right." *Scott* held that joint use does not prevent the establishment of a prescriptive easement where there are acts independent of continuous use that show that the claimant's use is adverse.

*Ramirez*, 2009 WL 5135632, at *5 (citing *Scott v. Cannon,* 959 S.W.2d 712, 721–22 (Tex. App.—Austin 1998, pet, denied)) (internal citations omitted). Here, the trial court heard testimony from numerous individuals that all testified how the public has been using the land recreationally since 1940. But the trial court also heard testimony from numerous individuals that the County has been maintaining the road for at least the last four decades, possibly longer. In addition, Pancamo admitted to erecting a gate at the entrance of the road, and numerous individuals testified regarding the signs they saw posted near the road that said things such as, "no fishing," "no vehicles," "no camping," and "no trespassing."

The trial court, as fact finder, determines the credibility of the witnesses and the weight to be given their testimony. *See City of Keller,* 168 S.W.3d at 819. Accordingly, it was reasonable for the trial court to conclude that the road has been used by the public and maintained by the County for more than ten years. The County's maintenance of the road is an act of adverse claim independent of the public's continuous use. *See Barstow,* 742 S.W.2d at 50. Because the evidence demonstrates both joint use and independent acts to show adverse use, the purported contemporaneous use claimed by Pancamo is not fatal to the County's claim for a prescriptive easement. *See Scott*, 959

10

S.W.2d at 721–22. Based on the evidence, the trial court could have reasonably concluded that an easement exists because the public's use of the land was not permissive. *See Barstow,* 742 S.W.2d at 50.[3]

Concerning the public's recreational use, we do not find the case cited by Pancamo to be persuasive. *See Fannin*, 450 S.W.2d at 935. Pancamo argues that because the public only used the land in question for recreational purposes, and not for travel, there is no adverse use of the land. However, in *Fannin*, there was no evidence of County maintenance, and the court found that the public's use of the land was entirely permissive. *See id.* Here, in addition to the recreational use of the land, there was evidence of the County's maintenance of the road. Therefore, viewed in the light most favorable to the verdict, the evidence showed that County maintained the road and that the public's recreational use of the land was not permissive. *See City of Keller,* 168 S.W.3d at 822.

Pancamo also argues that the public's and County's use of the land was not open and notorious. However, as stated above, the trial court, as fact finder, determines the credibility of the witnesses and the weight to be given their testimony. *See id.* at 819. Pancamo noticed the County collecting trash and fixing potholes on the land in question. *See id.* at 822. Viewed in the light most favorable to the verdict, or trial court's finding in this case, this evidence supported the trial court's finding that the use of the land was both open and notorious.

---

[3] Additionally, the trial court may have even reasonably concluded that a prescriptive easement had been established prior to 1981. *See McCulloch v. Brewster County*, 391 S.W.3d 612, 616 (Tex. App.—El Paso 2012, no pet.); *see also Wallace v. Kent Cty.*, No. 07-11-00427-CV, 2013 WL 4531253, at *2 (Tex. App.—Amarillo Aug. 21, 2013, no pet.) (holding that "the existence of a public interest in a road established by implied dedication or prescription prior to September 1, 1981 was not affected" by Chapter 281 because the legislation was not retroactive).

Likewise, even though Pancamo argues that the use of the land by the public and the County was not continuous and uninterrupted, there was more than a scintilla of evidence that the County has been maintaining the road and that the public has been using the road continuously for the last several decades. *See id.* at 819.

Based on the foregoing, we conclude that the evidence is legally sufficient to support the trial court's finding that a prescriptive easement exists. *See City of Keller,* 168 S.W.3d at 827; *Villa Nova,* 711 S.W.2d at 127-28; *Moody,* 593 S.W.2d at 377–78. We overrule Pancamo's sole issue.

### III. CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Delivered and filed the
26th day of July, 2018

12